Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
**DAVIS+GILBERT LLP**
1675 Broadway
New York, New York 10019
Telephone: (212) 468-4800
Fax: (212) 468-4888

Christopher T. Holland (SBN 164053)
CHolland@HollandLawLLP.com
Clark A. Waldon (SBN 312696)
CWaldon@HollandLawLLP.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Defendant Verve Group Europe GMBH*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ALEX WOODS, individually and on behalf of all others similarly situated,

*Plaintiff,*

vs.

VERVE GROUP EUROPE GMBH, a German limited liability company,

*Defendant.*

Case No.: 5:24-cv-04909-NW

**DEFENDANT VERVE GROUP EUROPE GMBH'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT, COMPEL ARBITRATION, AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 9 U.S.C. § 1**

**Hearing Date:** November 19, 2025
**Hearing Time:** 9:00 a.m.
**Judge:** Noël Wise
**Hearing Location:** San Jose Courthouse, Courtroom 3, 5th Floor

**VERVE GROUP EURPOPE GMBH'S NOTICE OF MOTION AND MOTION TO DISMISS TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2025 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 3 of the Honorable Noël Wise, located on the 5th Floor of the Robert F. Peckham Federal Building and U.S. Courthouse, 280 South 1st Street, San Jose, California 95113, Defendant Verve Group Europe GmbH ("Defendant" or "VGE") will and hereby does move to dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiff Alex Woods ("Plaintiff") in its entirety and with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in the alterative, VGE moves to compel individual arbitration and stay this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., as Plaintiff entered into a valid and enforceable arbitration agreement with non-party The Meet Group, Inc. ("Tagged") when he used the Tagged application and agreed to the Tagged Terms of Service.

The specific issues raised through VGE's motion are as follows:

1. Whether all of Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because Plaintiff does not (and cannot) allege that he has suffered any concrete, particularized harm and therefore lacks Article III standing, including because he consented to and wanted the conduct about which he now complains;
2. Whether all of Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) because he consented to the collection and sharing of the information at issue with software service providers;
3. Whether Plaintiff's claim under Cal. Penal Code § 638.51 should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he does not allege that VGE installed or used a pen register;
4. Whether Plaintiff's claim under Cal. Penal Code § 638.51 should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because, even if Plaintiff adequately alleged that VGE installed or used a pen register, VGE and/or Tagged qualify as an electronic or wire communication service provider such that Plaintiff's consent is a defense to liability;
5. Whether Plaintiff's claim under Cal. Penal Code § 502 should be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6) because Plaintiff lacks statutory standing and does not allege VGE's knowledge of any unauthorized conduct;

6. In the alternative to dismissing this action pursuant to Fed. R. Civ. P. 12(b), whether this action should be compelled to arbitration because Plaintiff entered into a valid and binding arbitration agreement when he signed up to use Tagged and agreed to the Tagged Terms of Service;

7. In the alternative to dismissing this action pursuant to Fed. R. Civ. P. 12(b), whether Plaintiff agreed to delegate questions of arbitrability to the arbitrator when he agreed to the Tagged Terms of Service, which state that "[a]ll issues shall be for the arbitrator to decide, including the scope of this Arbitration Agreement"; and

8. In the alternative to dismissing this action pursuant to Fed. R. Civ. P. 12(b), whether Plaintiff's claims against VGE are subject to the arbitration agreement in the Tagged Terms of Service because they are either (a) "intimately founded in and intertwined with" the Tagged Terms of Service and Tagged Privacy Policy, or (b) based on interdependent and concerted conduct by VGE and Tagged that relates to the Tagged Terms of Service and Tagged Privacy Policy.

This motion is based on this Notice of Motion, the following memorandum of points and authorities, VGE's concurrently filed request for judicial notice, with a supporting declaration of Marc J. Rachman (the "Rachman Decl.") and the Exhibits attached thereto, the supporting declaration of John Nicolas Guinto (the "Guinto Decl.") and the Exhibits attached thereto, and on all pleadings and papers on file or to be filed in this action, on the arguments of counsel, and on any other matters properly before the Court.

//

//

//

//

//

//

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. VGE is an Advertising Technology Company. ........ 2

B. Plaintiff Downloaded and Used the Tagged App and Thereby Agreed to Tagged's TOS and Privacy Policy. ........ 3

C. Plaintiff Ignores Tagged's TOS and Privacy Policy Disclosures. ........ 4

D. Plaintiff's Claims Rely on VGE's Contracts with Tagged, Which Require Tagged to Obtain Appropriate Consent. ........ 6

E. Evidence Incorporated by Reference into Plaintiff's FAC. ........ 8

III. LEGAL STANDARDS ........ 8

A. Standard to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ........ 8

B. Standard to Compel Arbitration. ........ 9

IV. ARGUMENT TO DISMISS ........ 10

A. The FAC Must be Dismissed Because the Plaintiff Lacks Article III Standing. ........ 10

1. Plaintiff Only Alleges a Nonactionable Statutory Violation ........ 10

2. Plaintiff Fails to Carry His Burden of Establishing that the Alleged Harm is Directly Traceable to VGE. ........ 14

3. Plaintiff's Claim for Injunctive Relief Must Fail Because There is no Threat of Future Harm ........ 15

B. The FAC Does Not Adequately Allege Any CIPA Violation and Plaintiff's Consent Bars Liability ........ 16

1. VGE's SDK is Not a Pen Register ........ 16

2. Holding VGE Liable Under CIPA Would Undermine the CCPA ........ 19

3. The FAC Fails to Adequately Plead a CIPA Violation ........ 21

4. Plaintiff's Consent to Tagged's TOS and Privacy Policy Precludes

Liability ........................................................................................ 21
C. The FAC fails to State a CDAFA Claim Because It Insufficiently Pleads the Requisite Acts, Access, and Damages. ........................................................ 22
V. ARGUMENT TO COMPEL ARBITRATION ................................................................ 25
A. Plaintiff Agreed to Tagged's Binding Arbitration Agreement. ............................... 25
B. Plaintiff Delegated Questions of Arbitrability and Scope to the Arbitrator. ............ 26
C. Even in the Absence of Delegation Language, this Court Should Find that the Arbitration Agreement Encompasses Plaintiff's Claims. .................................. 27
D. VGE is Entitled to Enforce Plaintiff's Arbitration Agreement with Tagged as a Non-Signatory under California's Doctrine of Equitable Estoppel. ................. 27
1. Plaintiff's claims are intertwined with his contract with Tagged because they require interpretation of the Tagged Privacy Policy. .............. 28
2. Plaintiff's allegations that Tagged and VGE acted jointly to invade his privacy are similarly intertwined with the Tagged Privacy Policy. ........................................................................................ 31
E. The Court Should Stay This Action Pending Resolution of Arbitration. ................. 33
VI. CONCLUSION ........................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Vertical Ent., LLC*,
854 F. App'x 816 (9th Cir. 2021) .......... 9

*Airtourist Holdings LLC v. HNA Grp.*,
2018 WL 3069444 (N.D. Cal. Mar. 27, 2018) .......... 31

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) .......... 28

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Jan. 28, 2025) .......... 13

*Bender v. Twilio Inc.*,
2025 WL 2308484 (N.D. Cal. Aug. 11, 2025) (Martínez-Olguín, J.) .......... 26, 31

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 9

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......... 23, 24

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 12

*Carter v. Spiegel*,
2022 WL 126303 (N.D. Cal. Jan. 13, 2022) .......... 32

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742 (Cal. Super. Sept. 9, 2024) .......... 19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 27

*City of Chicago v. Morales*,
527 U.S. 41 (1999) .......... 20

*Cody v. E. Gluck Corp.*,
2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) .......... 12

*Coinmint, LLC v. DX Corr Design, Inc.*,
2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) .......... 32

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 24

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 16

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 21

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) .......... 16

*In re Ethereummax Inv.*,
2023 WL 6787827 (C.D. Cal. June 6, 2023) .......... 23

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) .......... 9, 27

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .......... 28, 29

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 11, 12

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) .......... 9

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) .......... 10

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) .......... 15

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021) .......... 10

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 8, 12

*Heiting v. Taro Pharms. United States, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 23, 24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 9, 26

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F. 4th 702 (9th Cir. 2024) .......... 28, 29

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 13

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 8

*Hunt v. Meta Platforms, Inc*
735 F. Supp. 3d 1133 (N.D. Cal 2024) .......... 30, 31

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 16

*Keebaugh v. Warner Bros. Entm't Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 25, 26

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal May 13, 2025) .......... 11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) (Wise, J.) .......... 11

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .......... 27

*Kroskey v. Elevate Labs, LLC*,
2025 WL 1507091 (N.D. Cal. May 27, 2025) .......... 26, 28

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
845 F.3d 979 (9th Cir. 2017) .......... 9

*Kyle Atkins v. Amplitude, Inc.*,
No. 3:24-cv-04913-RFL (N.D. Cal.) .......... 11

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2024) .......... 22

*Lara v. Onsite Health, Inc.*,
896 F. Supp. 2d 831 (N.D. Cal. 2012) .......... 25

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......... 14

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .......... 9

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 19

*Lomeli v. Midland Funding, LLC*,
2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) .......... 2

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022)....23

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) (Wise, J.)....12, 15, 19

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025)....15

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)....26

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (Cal. App. 2d Dist. 2022)....24

*Mundi v. Union Sec. Life Ins. Co.*,
555 F.3d 1042 (9th Cir. 2009)....28

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014)....25

*Noah Bender v. Twilio Inc.*,
No. 3:24-cv-04914-AMO (N.D. Cal.)....11

*Norcia v. Samsung Telecommunications Am., LLC*,
845 F.3d 1279 (9th Cir. 2017)....10

*In re Pac. Fertility Ctr. Litig.*,
814 F. Appx. 206 (9th Cir. 2020)....29

*Park v. Webloyalty.com, Inc.*,
2014 WL 4829465 (S.D. Cal. Sept. 29, 2014)....14

*People v. Larkin*,
194 Cal. App. 3d 650 (Cal. App. 1987)....17

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....9, 26

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025)....12

*Rodriguez v. Autotrader.com Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)....11, 12

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super. Oct. 2, 2024)....13

*Salas v. Universal Credit Servs., LLC*,
2019 WL 1242448 (S.D. Cal. Mar. 18, 2019)....32

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201 (Cal. Super. Jan. 27, 2025) .......... 18

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
843 F. Supp. 2d 1033 (N.D. Cal. 2012) .......... 32

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 14

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 10, 33

*Spy Dialer, Inc. v. Reya LLC*,
2018 WL 3689554 (C.D. Cal. July 26, 2018) .......... 23

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) .......... 17

*Tosco Corp. v. Communities for a Better Env't*,
236 F.3d 495 (9th Cir. 2001) .......... 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 11

*In re Uber Text Messaging*,
2019 WL 2509337 (N.D. Cal. June 18, 2019) .......... 9

*In re United States*,
885 F. Supp. 197 (C.D. Cal. 1995) .......... 18

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 13

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 2

*United States v. Rosenow*,
50 F.4th 715 (9th Cir. 2022) .......... 18

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
962 F. Supp. 2d 1172 (N.D. Cal. 2013) .......... 31

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) .......... 12

*Velazquez v. CEC Ent., LLC*,
2024 WL 4560169 (C.D. Cal. Oct. 23, 2024) .......... 10

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 8

*Xu v. Reuters News & Media Inc.*,
2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 18, 21

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) .......... 28

**Statutes**

9 U.S.C. § 3 .......... 10, 33

Cal. Civ. Code § 1798.100, 1798.105, 1798.120 .......... 20

Cal. Civ. Code § 1798.140(v)(1) .......... 19

Cal. Penal Code § 502 .......... 23, 24

Cal. Penal Code § 502(c)(1), (c)(2) .......... 22, 29

Cal. Penal Code § 502(c)(7) .......... 24, 29

Cal. Penal Code § 502(e)(1) .......... 24

Cal. Penal Code § 629.51 .......... 17, 21

Cal. Penal Code § 629.51(b) .......... 17

Cal. Penal Code § 630 .......... 16

Cal. Penal Code § 638.50(a) .......... 17

Cal. Penal Code § 638.50(b) .......... 16

Cal. Penal Code § 638.51 .......... 11, 16, 17

Cal. Penal Code § 638.51(b) .......... 21

Cal. Penal Code § 638.51(b)(5) .......... 29

Cal. Penal Code § 638.52 .......... 17

Cal. Penal Code § 638.52(d)(1) .......... 18

CIPA § 629.51 .......... 17

CIPA § 638.50 .......... 17, 19

CIPA § 638.51 .......... 16, 17

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 2, 8

Fed. R. Civ. P. 12(b)(6) .......... 1, 2, 8, 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff's claims for violations of the California Invasion of Privacy Act ("CIPA") and California Comprehensive Computer Data Access and Fraud Act ("CDAFA") are based on his alleged downloading of Tagged's dating mobile application (the "Tagged App") to his Android device. As alleged by Plaintiff, the Tagged App included a software development kit ("SDK") provided by VGE called PubNative (the "VGE SDK") and the VGE SDK collected data concerning Plaintiff in violation of CIPA and CDAFA, such as Plaintiff's device ID and geolocation. Yet, even if Plaintiff did download the Tagged App to his Android device as alleged, it is undeniable that Plaintiff would have first had to agree to the Tagged App's Terms of Service (the "TOS") and Privacy Policy. This alone is fatal to Plaintiff's claims as both the TOS and Privacy Policy fully disclose that Tagged may collect and share personal information with third-parties for analytics and advertising purposes.

Nonetheless, the FAC asserts claims for purported violations of Plaintiff's privacy rights, relying on threadbare, conjectural, and hypothetical allegations of manufactured harm that courts in this district in very similar cases have found insufficient to assert claims under CIPA and CDAFA. Specifically, the FAC utterly fails to plead facts sufficient to establish that Plaintiff had an expectation of privacy in his use of the Tagged App (indeed he sought out a purported "violation" of that privacy and reasonably expected that the dating app would disclose his personal information, including geolocation) or that he suffered a concrete injury. Indeed, this Court held in two recent decisions addressing nearly identical claims under CIPA that mere collection of such user data alone is insufficient to establish standing. Moreover, Plaintiff has not pleaded—and cannot plead—that he has a claim against VGE for willfully or intentionally invading his privacy, as is required for him to have standing to assert his claims. Further, Plaintiff's FAC lacks any allegations as to the requisite intent because VGE always contractually required its software to be used lawfully and with informed user consent. As such, Plaintiff has neither the standing nor substance to support his claims, and the FAC must be dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as amendment would clearly be futile. Plaintiff's expansive application of CIPA and CDAFA would lead to the untenable result that almost every website and mobile application is in violation of these statutes.

In the alternative to dismissing the FAC pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), VGE respectfully submits that there are ample grounds to grant its motion to compel arbitration of Plaintiff's claims against it and stay this action pending the completion of the arbitration. Plaintiff should not be allowed to circumvent his arbitration agreement with Tagged by filing this action against VGE instead of Tagged. Further, under California's doctrine of equitable estoppel, VGE can enforce Plaintiff's arbitration agreement with Tagged as: (1) the claims against VGE are intimately founded in and intertwined with the underlying contract, or (2) the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

## II. BACKGROUND

For purposes of this Motion only, Plaintiff's allegations set forth below are assumed to be true unless otherwise indicated. Additionally, the facts set forth herein include declarations containing facts incorporated by reference in the FAC, facts which the court may take judicial notice of, and/or facts which the court may consider in determining the issue of whether an arbitration agreement exists between the parties. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (holding that the court may consider certain materials, including "documents incorporated by reference in the complaint, or matters of judicial notice," in evaluating a Rule 12(b)(6) motion); *see also Lomeli v. Midland Funding, LLC*, 2019 WL 4695279, at *4, *8 (N.D. Cal. Sept. 26, 2019).

### A. VGE is an Advertising Technology Company.

VGE is a digital advertising platform connecting advertisers and publishers with responsible advertising solutions to enable better outcomes. *See* Guinto Decl. ¶ 3. VGE offers the VGE SDK to help buyers of advertising maximize return on ad spend and help sellers bring in more revenue while navigating changes in advertising trends. *Id*. at ¶ 4. As relevant to this matter, VGE provides its clients, which are consumer-facing online businesses like Tagged, with the VGE SDK so that those businesses can better engage with their own end-users and enable them to generate revenues from showing ads to their users, thus financially enabling them to run their service on a free, non-subscription basis. *Id*.

### B. Plaintiff Downloaded and Used the Tagged App and Thereby Agreed to Tagged's TOS and Privacy Policy.

Plaintiff, a purported citizen of the state of California (*see* FAC ¶ 6), alleges that he "downloaded and used" the Tagged App, which is a dating app, on his Android mobile device within the last year[1] and the "developers of the 'Tagged' mobile app have embedded the VGE SDK and other technology or code into their mobile app, allowing Defendant to collect Plaintiff's timestamped geolocation information, device IDs, device fingerprint data, and information about which app(s) he uses on his mobile device." *Id*. ¶¶ 43-44. Plaintiff "enabled location services for the sole purpose of sharing his location with 'Tagged.'" *Id.* ¶ 44. Plaintiff further asserts that he "did not (and could not) grant [VGE] permission to collect any information," without providing any factual allegations in support of this conclusory statement. *Id*. ¶ 45. What the FAC fails to reveal is that all Tagged users, including Plaintiff, must expressly consent to the Tagged TOS and Privacy Policy before using the Tagged App. To download the Tagged App on an Android device, a user must first navigate to the Google Play Store and look up the Tagged App. *See* Rachman Decl., Exhibit A. Once the user selects the Tagged App from the Google Play Store menu, the Google Play Store has sections devoted to data privacy disclosures entitled "Data Safety" and "Data Shared." *See id*. These disclosures inform users regarding "the kinds of data this app may collect and share", as well as "data that may be shared with other companies or organizations." *See id.* This includes several categories of information, including "contacts," "device or other IDs," "app activity", "calendar", "location", and "personal info." *See id*.

Once a user has downloaded the Tagged App onto their device, and before they can use the app, they are prompted to choose between creating a Tagged account or otherwise log-in to an existing account. *See* Rachman Decl., Exhibit B. Before finalizing the creation an account, users are informed that "[b]y clicking Continue you agree to the **Terms of Service** and **Privacy Policy**", with each bolded

---

[1] The FAC vaguely indicates that Plaintiff downloaded the Tagged App "within the last year." FAC ¶ 44. As set forth in VGE's Request for Judicial Notice, filed in connection with this Motion, the Court may take judicial notice of the Tagged TOS and Privacy Policies in effect from September 15, 2023 through the the filing of the FAC, which are also incorporated by reference in the FAC, since by downloading the Tagged App., Plaintiff had to consent to them. *See* Rachman Decl., Exhibits D-L. For purposes of this Motion, there are no material differences between the versions of Tagged's TOS and Privacy Policy. For ease, VGE has relied on the latest version of each in effect at the time the Plaintiff filed the FAC (Rachman Decl., Exhibits D, H) throughout.

phrase containing a hyperlink to the relevant document. *See id*. When users continue to register an account, a "Registration" pop up appears on the screen, requiring users to accept the Tagged TOS and confirm they have read and understood the Tagged Privacy Policy. *See* Rachman Decl., Exhibit C. A user must press "ACCEPT TERMS" in the registration popup to finish creating their account and log into the Tagged App. *See id*. Thus, to have "downloaded and used" the Tagged App, Plaintiff would have been faced with, and must have affirmatively accepted Tagged's TOS and Privacy Policy.

**C. Plaintiff Ignores Tagged's TOS and Privacy Policy Disclosures.**

Plaintiff alleges that he "did not (and could not) grant Defendants permission to collect any information—especially not precise geolocation information—from his device whatsoever." FAC ¶ 45. But the FAC ignores the disclosures contained in Tagged's TOS and Privacy Policy, each of which he consented to when he downloaded and used the Tagged App. *See* Rachman Decl., Exhibits D and H.

***Tagged TOS*****:** The Tagged TOS controls a user's access to and use of the Services on the Tagged App. The Tagged TOS provides that "[b]y downloading or using Tagged or hi5 you agree to this Agreement, our Privacy Policy, and our Content and Conduct Policy. The Privacy Policy and the Content and Conduct Policy are each part of this Agreement." *See* Rachman Decl., Exhibit D, p. 1. Further, the Tagged TOS includes an arbitration agreement and class action waiver. Specifically, Section M of the Tagged TOS provides that "all Disputes between you and The Meet Group, Inc. [the owner of Tagged] shall be resolved by binding arbitration." *See id*. at § M. In agreeing to Tagged's TOS, signatories acknowledge that "[t]he arbitration shall be commenced as an individual arbitration, and shall in no event be commenced as a representative or class arbitration", and "[n]either you, nor any other member or user of the Tagged and hi5 services, can be a class representative, class member, or otherwise participate in a class, representative, consolidated or private attorney general proceeding." *See id.* The Tagged TOS states that "the Arbitration Agreement of this Agreement (below) shall be governed by the Federal Arbitration Act", and that any arbitration brought under the Tagged TOS "is governed by the laws of the State of Delaware, without giving effect to any principles of conflicts of laws." *See id.* at § L.

Additionally, the Tagged TOS provides that "[Tagged] may offer Services through a mobile website and/or mobile applications … This Agreement governs all Services that are accessible on or through the Mobile Applications. If you use the Services on a mobile device, you agree that information about your use of the Services through your mobile device and carrier may be communicated to us, including but not limited to the identities of your mobile carrier or your mobile device, or your physical location." *See id*. at § J.

***Tagged Privacy Policy*:** At the beginning of its Privacy Policy, Tagged informs users that "[b]y using our Services (as defined below), you agree that your personal information will be handled as described in this Policy." *See* Rachman Decl., Exhibit H, p. 1. These "Services" are defined to include "communicat[ing] or otherwise interact[ing] or engag[ing] with us or the services available through our Sites, Mobile Apps, or other online services." *See id*. at § 1.

Tagged's Privacy Policy informs users that Tagged "may collect personal information directly from you, from third-party sources, and automatically through your use of our Services." *See id*. at § 2. Tagged informs users that it may then "disclose the personal information we collect … to provide you our Services, to respond to and fulfill your requests, as otherwise directed or consented to by you", with parties including "Brands, Affiliates, and Subsidiaries", "Business Partners", "Vendors and Services Providers", "Other TMG Users", and "Third Party Marketing and Analytics Providers." *See id*. at § 4. Regarding third party marketing and analytics providers, Tagged's Privacy Policy informs users "[w]e may also disclose your personal information, such as device and browsing, and activities and usage information, to third party marketing and data analytics providers, and other companies who provide marketing, advertising, campaign management, or analytics services on our behalf." *See id*. at § 4.

Tagged also expressly discloses that collected personal information may include, *inter alia*: (1) "Contact Information" such as a user's "name, email address, phone number, or other similar identifiers"; (2) "Purchases, Payments, and Rewards", including "payment type, payment card details, billing, shipping address, purchasing information, and any other financial or commercial related information necessary for facilitating our Services"; (3) "Communications and Interactions", including "records of your contact details, communications and interactions, your posts or

submissions, and our responses"; (4) "Device and Browsing Information", including " browser type, domain name, page views, access times, date/time stamps, operating system, language, device type, unique ID, Internet service provider, referring and exiting URLs, clickstream data, operating system, language, and similar device and browsing information"; and (5) "Location Information", including "general location information about you, such as through your IP address." *See id.* at § 2. Additionally, within a section entitled "Additional Information for California Residents", Tagged discloses that "[i]n some circumstances, we may collect account log-in information, payment card information and related details, ***precise geolocation data***, racial or ethnic origin, messages and content shared between users, and personal information collected and analyzed concerning a consumer's health, sex life, or sexual orientation." *See id.* at § 13(B) (emphasis added).

Additionally, Plaintiff was put on further notice that he was consenting to a broad disclosure of information to third parties. The Tagged Privacy Policy includes a section on "Cookies, Targeting, and Analytics" which states that "[w]e and our ***third-party service providers*** use cookies, pixels, local storage objects, log files, and ***other mechanisms*** to automatically collect browsing, activity, device, and other similar information within our Services. We use this information to, for example, analyze and understand how users access, use, and interact with our Services . . . as well as for marketing and analytics purposes, and to personalize content in our Services." *See id.* at § 5 (emphasis added). The Tagged Privacy Policy further states "[w]e and our ***third-party service providers*** may also use the cross-device use and other information we learn about you to serve targeted advertising or personalize content within our Services." *Id.* (emphasis added).

### D. Plaintiff's Claims Rely on VGE's Contracts with Tagged, Which Require Tagged to Obtain Appropriate Consent.

Lastly, the FAC's claims necessarily rely on the contracts between VGE and Tagged. *See* FAC ¶¶ 10, 16 (referring to VGE's contract with Ifwe, Inc. (Tagged's parent that is now called The Meet Group, Inc.) to embed the VGE SDK into the Tagged App). First, these agreements permit Tagged to "embed[] [VGE's] SDK or other technology or code," which Plaintiff alleges "enables backdoor access to consumers' devices and opens a direct data collection pipeline to VGE and its advertising platform monetization partners." FAC ¶ 2. Second, Plaintiff's FAC makes clear that he is accusing

VGE and Tagged of acting in concert. *See, e.g., id.* ¶¶ 2, 10, 16, 44. VGE has met its obligations to protect the privacy rights of Tagged Users by entering into two agreements with Tagged: (1) the PubNative Mobile Publisher Ad Optimization Agreement Terms and Conditions (the "Publisher Optimization Agreement") and (2) the Data Processing Agreement with Publisher in accordance with Art. 28 GDPR (the "Data Processing Agreement"). Pursuant to both agreements, The Meet Group and/or Tagged was contractually required to obtain permissions from users to transmit their personal data would be obtained and that rights would be safeguarded. *See* Guinto Decl. ¶¶ 6-9, Exhibits 1-2.

***Publisher Optimization Agreement:*** The Publisher Optimization Agreement governs the provision of advertising optimization services offered by VGE to Tagged. *See id*. ¶ 6, Exhibit 1. The Publisher Optimization Agreement provides that "[e]ach party is responsible for its compliance with all applicable laws of data protection and privacy. This includes maintaining a privacy policy. [Tagged] will make sure that no personal data or personally identifiable information … is transmitted to [VGE] unless Publisher ***has obtained all required permissions or is otherwise entitled to transmit such Personal Data under applicable law***." *Id*. ¶ 7, Exhibit 1 § 5.4 (emphasis added). Additionally, Section 7.1 provides that "[Tagged] warrants that (a) it, and its inventory, will comply with applicable laws and regulations, particularly also including laws and regulations pertaining to advertising and privacy; (b) it will comply with these Terms and Conditions, any booking specifications and IO terms and any other specifications made by [VGE]; and (c) it owns or controls the inventory and that therefore, [VGE's] agreed use of the inventory does not infringe the rights of any third party." *Id*. ¶ 7, Exhibit 1 § 7.1.

***Data Processing Agreement*:** The Data Processing Agreement governs the data protection obligations of Tagged regarding its use of the VGE SDK. *See id*. ¶ 8, Exhibit 2. The Data Processing Agreement provides that "[Tagged] is solely responsible for assessing the lawfulness of the data processing and for safeguarding the rights of data subjects" and that Tagged is responsible for "provid[ing] the user with the necessary information about the data processing according to Art. 13 GDPR at the time personal data (as specified in section 5) is obtained." *See id*. ¶ 9, Exhibit 2 §§ 6(1), 6(4). Tagged is also responsible for "inform[ing] the user in the app's privacy policy about the collection of identifiers and the user's right to object to the processing." *See id*. ¶ 9, Exhibit 2 § 6(4).

### E. Evidence Incorporated by Reference into Plaintiff's FAC.

VGE submits with this motion documentary evidence that this Court should accept on judicial notice, including because such evidence is incorporated by reference into the FAC and is publicly available. This documentary evidence includes (1): the Tagged Consent Flow, including the Google Play Store Interface and the disclosures contained therein, as displayed to users who navigate to the Tagged App via the Google Play Store from an Android Device (*see* Rachman Decl., Exhibits A-C); (2) the publicly available Tagged TOS in effect since September 15, 2023 (*see* Rachman Decl., Exhibits D-G); and (3) the publicly available Tagged Privacy Policy in effect since September 15, 2023 (*see* Rachman Decl., Exhibits H-L). As further explained in VGE's concurrently filed Request for Judicial Notice, the Tagged Consent Flow, Tagged TOS, and Tagged Privacy Policy are incorporated by reference into the FAC because they underpin Plaintiff's allegations that he "downloaded and used" the Tagged App, but did not authorize data collection and sharing. *See* FAC ¶¶ 43-45.

## III. LEGAL STANDARDS

### A. Standard to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The issue of Article III standing is jurisdictional and is therefore "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To meet their burden of establishing standing, plaintiffs must show that they have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *See Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 (2016)); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *2 (C.D. Cal. July 12, 2024), *adopted* 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (citations omitted). If a plaintiff fails to establish standing or any other aspect of subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp. v. Communities for a*

*Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001) (citations omitted).

Under Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court may dismiss for either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citations omitted). To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff's "factual allegations [in the complaint] must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted). "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).

Further, the Court may dismiss any matter with prejudice when amendment would be futile. *See Abbas v. Vertical Ent., LLC*, 854 F. App'x 816, 819 (9th Cir. 2021) (affirming that dismissal with prejudice is proper when amendment would be futile).

**B. Standard to Compel Arbitration.**

In determining a motion to compel arbitration, the court's role is generally limited to determining whether there is an agreement to arbitrate between the parties that covers the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If an agreement exists, the FAA 'leaves no place for the exercise of discretion by a district court.'" *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193-94 (9th Cir. 2024) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). However, the parties may agree to have an arbitrator decide "gateway questions of arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (citations omitted). When such an agreement is "clear and unmistakable," (*id.* at 69), only two issues are left to be decided by the court: (i) whether the parties "entered into a contract in the first place," (*In re Uber Text Messaging*, 2019 WL 2509337, at *6 (N.D. Cal. June 18, 2019)); and (ii) any challenges to "the validity of the delegation provision in particular" (*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74–75 (2010)). When there is a delegation provision, a party cannot not seek judicial resolution of the validity of the arbitration agreement. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983

(9th Cir. 2017) (distinguishing "challenges to the validity of a contract with an arbitration clause" from "challenges to the very existence of the contract").

The party seeking arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence," *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (citations omitted), and "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Courts apply a summary judgment standard when reviewing a motion to compel arbitration. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The court may consider "affidavits, declarations, and other documentary evidence" in determining whether an arbitration agreement exists. *Velazquez v. CEC Ent., LLC*, 2024 WL 4560169, at *2 (C.D. Cal. Oct. 23, 2024) (citations omitted). If a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).

## IV. ARGUMENT TO DISMISS

### A. The FAC Must be Dismissed Because the Plaintiff Lacks Article III Standing.

Plaintiff's conjectural, abstract allegations of a manufactured, bare statutory harm are insufficient to support Article III standing because: (i) Plaintiff has not plausibly alleged that he suffered a concrete harm above a bare statutory violation because he had no objectively reasonable expectation of privacy in the type of device information that was allegedly shared with VGE *with* his consent; (ii) even assuming Plaintiff has plausibly alleged that he suffered a concrete harm, he has not alleged that such harm is directly traceable to VGE; and (iii) Plaintiff does not have standing to pursue injunctive relief because, even as alleged, there is no threat of future harm where he could have removed the app at any time.

1. <u>Plaintiff Only Alleges a Nonactionable Statutory Violation</u>

Plaintiff's allegations amount to no more than a bare statutory violation, which does not establish an injury in fact. Although Plaintiff does not expressly label himself a "tester" plaintiff, the FAC—filed by Plaintiff's counsel on the same day as two other similar class action complaints were

filed in this District[2]—lays bare that Plaintiff sought out and downloaded the Tagged dating app in a blatant attempt to manufacture a claim under CIPA, despite having consented to the complained-of practices. Plaintiff alleges that he was injured—by VGE—after he voluntarily downloaded and used the Tagged App, after having accepted the app's consent disclosures, Privacy Policy, and TOS (without even allegedly using the app). Now, Plaintiff asks the Court to find that his privacy was *invaded* when the activity he consented to actually occurred and formed the basis for the very claim he conjured. Such a bare statutory injury does not satisfy the high bar for Article III standing. Indeed, "Congress may not 'enact an injury into existence' merely by granting a right to sue, and therefore there is no automatic satisfaction of the injury-in-fact requirement just because a plaintiff has a statutory right to sue." *Rodriguez v. Autotrader.com Inc.*, 762 F. Supp. 3d 921, 926 (C.D. Cal. 2025) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Rather "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue […] in federal court." *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original); *see also Khamooshi v. Politico LLC*, 2025 WL 1408896, at *4 (N.D. Cal May 13, 2025) ("A violation of CIPA, like a constitutional violation, does not automatically give rise to a concrete injury."); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) ("Because § 638.51 does not codify a substantive privacy right that bears a close relationship to a traditionally recognized harm," the plaintiff must otherwise adequately "allege a concrete harm resulting from [defendant's] alleged violation.").

In two recent decisions, this Court applied these principles to dismiss nearly identical "trap and trace" claims under CIPA for lack of standing because there is no concrete harm from the mere collection of the kinds of basic user data at issue here, such as geolocation device ID. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at **3-4 (N.D. Cal. June 24, 2025) (Wise, J.) (holding that plaintiffs "failed to allege the invasion of a legally protected right" where the only purported harm under CIPA's "trap and trace" provision was that the defendants' website deployed technology that impermissibly "collect[ed] Plaintiff's 'data' and 'information,'" including IP

---

[2] *See Kyle Atkins v. Amplitude, Inc.*, No. 3:24-cv-04913-RFL (N.D. Cal.), filed August 8, 2024, and *Noah Bender v. Twilio Inc.*, No. 3:24-cv-04914-AMO (N.D. Cal.), filed August 8, 2024.

addresses and geographic location); *Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at **3-4 (N.D. Cal. Aug. 6, 2025) (Wise, J.) (same). Other courts have reached the same conclusion. In *Gabrielli*, the court similarly held that capturing and conveying plaintiff's IP and other addressing information to a third party amounted only to a bare statutory violation, which was insufficient to establish standing. *See* 2025 WL 522515, at *8.

Here too, Plaintiff's only allegations are that the VGE SDK, one of many SDKs used in the Tagged App—a practice that Tagged discloses and to which Plaintiff consented—enabled VGE to collect certain basic information from his device, such as geolocation and device IDs. Plaintiff's allegations are simply a conclusory reframing of the statutory provision and are not sufficient to plausibly establish that he suffered a concrete injury in fact divorced from the statutory violation. *See, e.g., Kishnani,* 2025 WL 1745726, at **3-4 (dismissing "conclusory" CIPA claim based on website tracking technology for lack of Article III standing); *Curiositystream, Inc.*, 2025 WL 2272413, at **4-5 (same); *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at **2-3 (C.D. Cal. Feb. 3, 2025); *Cody v. E. Gluck Corp.*, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023).

Even assuming Plaintiff had some mixed or legitimate motive in downloading the Tagged App other than generating his legal claims, Plaintiff does not provide sufficient factual allegations to render it plausible that he suffered a cognizable, intangible invasion of privacy because he did not reasonably expect his information to be kept private when downloading and using the Tagged App. The allegations in this matter are similar to the facts in a recent case where a court in this District granted with prejudice a motion to dismiss for lack of standing where the plaintiff "visited and entered information into Defendant's website *expecting* the information to be accessed, recorded, and disclosed . . . ." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (emphasis added) (holding that plaintiff "cannot claim an injury when her expectations were ultimately met."). In *Rodriguez*, the court explained that "[e]ven assuming . . . to be true [that the plaintiff also had a legitimate interest in using the Defendant's website], it does not change the fact that she expected her privacy to be invaded, thereby negating any injury in fact." *See id.* at *1 n.2; *see also Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims

for lack of standing because the tester plaintiff had no expectation of privacy). This is even *more* apt where, as here, Plaintiff sought out not a consumer product, but a *dating* app, which users must reasonably expect, understand—and indeed hope—will yield in the disclosure of personal information, including geolocation. Indeed, as alleged, Plaintiff enabled location services on the Tagged App "for the sole purpose of sharing his location with 'Tagged'". FAC ¶ 44. There is simply no objectively reasonable expectation of privacy in the information associated with downloading a dating app. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (holding that "e-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit"); *Kishnani*, 2025 WL 1745726, at *4 ("[I]t is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP Addresses.'") (quoting *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020)). California state courts are also routinely dismissing such claims. *See, e.g., Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Jan. 28, 2025) (adopting reasoning of *Forrester* and further noting that most websites, including the court's own website, "track the IP addresses of their visitors."); *Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) (dismissing CIPA claims and denying leave to amend).

Aside from the practical reality that downloading and using a dating app would necessarily implicate the disclosure of certain addressing information, Plaintiff's repeated consent to such disclosures and his enablement of geolocation sharing (i.e., *opting-in* to sharing his location) means that indeed his expectation—and goal—was to share such information. Plaintiff's conduct and consent directly contradicts any espoused expectation of privacy, and thus vitiates his claim:

> the plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability.

*See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) (citations omitted). Consent may be express, or it may be implied through continued use of a product or service despite disclosure of the complained of practices. Here, Plaintiff alleges that he "downloaded and used the Tagged app on his Android device within the last year." FAC ¶ 43. As the incorporated and judicially noticeable

materials establish, that allegation means that he navigated to the Tagged App on the Google Play Store, which includes explicit disclosures regarding Tagged's data collection and sharing practices before he ever even downloaded the app. Then upon both downloading the Tagged App and using it, Plaintiff agreed to the Tagged Privacy Policy, which disclosed the data usage practices that Plaintiff complains of, i.e., that the Tagged App collected and shared his in-app activity with its service providers, like VGE. *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (holding that plaintiff knowingly consented to website's hyperlinked terms of service because plaintiff was required to "affirmatively acknowledge the agreement before proceeding"). Here, Plaintiff cannot plausibly allege an injury where he repeatedly consented to the disclosure of routine information that regular users of apps, specifically dating apps, would have expected, and to which he *contractually consented*. Plaintiff's vague and unsupported assertion that he "did not (and could not) grant [VGE] permission to collect any information" cannot withstand dismissal. *See Park v. Webloyalty.com, Inc.*, 2014 WL 4829465, at *6 (S.D. Cal. Sept. 29, 2014) (dismissing interception claim under Electronic Communications Privacy Act because plaintiff did not provide "factual allegations" that "plausibly show[ed] there was an unauthorized interception (rather than a consented-to transfer of information)")

2. Plaintiff Fails to Carry His Burden of Establishing that the Alleged Harm is Directly Traceable to VGE.

Even assuming Plaintiff adequately alleged that he suffered a concrete injury, such injury is not "fairly traceable" to VGE. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-51 (1992) (the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not […] th[e] result [of] the independent action of some third party not before the court") (citations omitted). As a threshold matter, and as discussed above and throughout, Plaintiff's consent to the Tagged App's data collection practices means that Plaintiff himself invited the harm of which he now complains. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) ("Courts have found that [a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink, and it is sufficient to require a user to affirmatively accept the terms . . . .") (citations omitted). Having no factual basis to connect the "injury" to VGE, Plaintiff attempts to create a nebulous, nefarious ecosystem all based on *other entities'* general, hypothetical practices.

For example, two of Plaintiff's allegations discuss how the Pentagon "finds its targets," without any indication that the Pentagon uses the VGE SDK or that VGE is engaged in similar behavior as the Pentagon. *See, e.g.,* FAC ¶¶ 38-39. Next, Plaintiff misleadingly refers to a blog post that VGE has on its website that generally discusses the practice of "identity graphing", but never states that VGE engaged in such conduct concerning Plaintiff. *See id.* ¶ 29. The FAC only alleges that VGE SDK was *"designed to allow"* VGE to secretly create a detailed log of Plaintiff's and the putative Class's precise movement patterns, but does not allege it actually did so. *See id.* ¶ 42 (emphasis added).

These hypothetical allegations about how the VGE SDK *might be used* to invade purported privacy rights are insufficient to demonstrate that VGE's SDK actually caused a concrete harm *to Plaintiff*. *See Kishnani*, 2025 WL 1745726, at *4 (by asserting only "that Defendants *could* gain 'additional information about [a] visitor such as name, date of birth, and address,' and that allegation *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into concrete harm to *him*"); *Curiositystream, Inc*., 2025 WL 2272413, at *5 (same); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at **6-7 (C.D. Cal. June 27, 2025) (holding that the plaintiff failed to allege concrete harm under CIPA in part because she alleged only that the purported trap and trace device "*may be capable* of collecting" certain information); *see also Gutierrez v. Converse Inc*., 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024), *aff'd*, 2025 WL 1895315 (9th Cir. July 9, 2025) (finding that even if the defendant "can connect the dots between different data the user generates," this alone is insufficient to establish that defendant actually did so in a way that violates CIPA). Again, Plaintiff includes no allegations indicating that his or any of the Class's "precise movement patterns" or corresponding "dossier[s]" were created or that VGE specifically does that through the VGE SDK embedded in the Tagged App. Aside from allegations describing hypothetical capabilities, Plaintiff has not and cannot allege any facts showing that VGE directly engaged in the allegedly injurious conduct.

3. Plaintiff's Claim for Injunctive Relief Must Fail Because There is no Threat of Future Harm

Plaintiff also cannot pursue injunctive relief because he has not alleged that he intends to use Tagged in the future and there is no plausible threat of future harm where Plaintiff could have removed

the free app from his device at any time, without risking any monetary damage or harm to his device. *See Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 886–87 (N.D. Cal. 2025); *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *10 (S.D. Cal. Jan. 12, 2024); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *4 (S.D. Cal. Oct. 24, 2023).

### B. The FAC Does Not Adequately Allege Any CIPA Violation and Plaintiff's Consent Bars Liability

The plain text of CIPA, its legislative intent, and California's overall statutory framework also preclude VGE from liability under CIPA § 638.51. CIPA is a decades-old criminal statute that was enacted to prevent "eavesdropping upon private communications," particularly via telephone calls. *See* Cal. Penal Code § 630; *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 688 (N.D. Cal. 2021) ("California enacted CIPA in 1967 to replace prior laws that permitted recording of telephone conversations when one party consents."). CIPA includes a provision that prohibits "a person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51. CIPA does not cover routine internet technologies like VGE's SDK, which is nothing like the traditional "pen register" or "trap and trace" telephone devices that CIPA was designed to encompass. Adopting Plaintiff's expansive interpretation of CIPA would threaten much of the modern foundation of the internet and serve to undermine the California Consumer Privacy Act (the "CCPA"), which California recently enacted to address precisely the kind of data collection that Plaintiff challenges.[3] In addition, Plaintiff fails to plead with particularity that VGE violated CIPA by using a pen register to intercept his communications, and his consent to the collection of his data under the Tagged TOS and Privacy Policy precludes VGE from liability under CIPA.

1. <u>VGE's SDK is Not a Pen Register</u>

Plaintiff's CIPA claim fails because the VGE SDK used by Tagged is not a pen register. CIPA defines a pen register as "a device or process that records . . . dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication

---

[3] California Senate Bill 690 (SB 690), which the California legislature is currently considering, would amend CIPA by adding an explicit exception to the statute to "specify that a pen register does not include a device or process used in a manner consistent with a commercial business purpose." *See* Cal. SB690 (Mar. 24, 2025), available at https://legiscan.com/CA/text/SB690/id/3186917.

is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Indeed, the prototypical pen register is a device attached by law enforcement to a suspect's telephone line "to monitor dialing activity" and "register[] the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced." *See People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (Cal. App. 1987). The VGE SDK used by Tagged does not fall within the scope of this definition because (i) Tagged is not a third-party law enforcement interceptor but rather a party to the communications that authorized collection of information via the VGE SDK, and (ii) the VGE SDK collects entirely different information than a traditional pen register.

CIPA § 638.50 incorporates by reference the definition of "electronic communications" included in CIPA § 629.51, which in turn specifies that this definition applies only "to the *interceptions* of wire and electronic communications." *See* Cal. Penal Code § 638.50(a) ("Electronic communication[s]" are further defined as "hav[ing] the meanings set forth in subdivision (a) of Section 629.51"); Cal. Penal Code § 629.51(b) ("This chapter applies to the *interceptions* of wire and electronic communications.") (emphasis added). Moreover, CIPA § 638.51 only precludes a person from installing a pen register "without first obtaining a court order pursuant to Section 638.52 or 638.53," but the only persons who can obtain a court order are "peace officers." *See* Cal. Penal Code § 638.51; Cal. Penal Code § 638.52 ("A peace officer may make an application [for] . . . an order authorizing or approving the installation and use of a pen register . . .").

Taken together, CIPA's express language limits its application to the *interception* of communications by a third-party law enforcement officer, not *collection* by the party receiving the communications. Because Tagged is a party to Plaintiff's purported communications, its authorized collection of information related to those communications via the VGE SDK does not fall within the scope of CIPA § 638.51. By analogy, the Ninth Circuit recently upheld dismissal of a wiretapping claim under CIPA because "a party to a conversation cannot . . . 'eavesdrop[]' on its own conversation." *See Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025). Indeed, adopting Plaintiff's expansive interpretation of a pen register is untenable because it would expose anyone to liability under CIPA § 638.51 that uses a Caller ID service or that operates a website that obtains signaling information to function. Moreover, it would undermine the entire

functioning of the internet because virtually every website requires collection of purported "signaling information" from users in the form of IP addresses to provide their services.

The information collected by a pen register is also entirely different from the information allegedly collected by VGE's SDK. A pen register is attached to a particular telephone line to collect call information regarding a specific person, including who that person calls, when, and for how long. By contrast, an SDK collects information regarding a device, such as the device's IP address, regardless of which person (or persons) use that device. Plaintiff does not suggest that VGE's SDK tracks who a user communicates with, how many times a user communicates with anyone, or for how long. CIPA was not designed to protect information regarding the location of an anonymous device, but rather details regarding everyone a specific individual communicates with via a specific telephone line. *See, e.g., In re United States*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (concluding that a "digital analyzer" that recorded telephone number information from a wireless call was not a pen register under federal law because it was not permanently "attached to the cellular telephone" or "attached to any telephone line"); *see also* Cal. Penal Code § 638.52(d)(1) (to obtain a court order to use a pen register, the "peace officer" must specifically identify "*the person* to whom is leased or in whose name is listed the *telephone line* to which the pen register . . . is to be attached") (emphasis added). Plaintiff does not allege that the VGE SDK is attached to a specific telephone line or that it tracks all of its users' communication patterns with other individuals. *See* Order at 4, *Sanchez v. Cars.com Inc*., No. 24STCV13201, at 5 (Cal. Super. Jan. 27, 2025) (holding that a pen register "refer[s] to devices or processes that are used to record or decode dialing, routing, addressing or signaling information from telephone numbers, not internet communications such as websites").

Indeed, there is no expectation of privacy in device information like an IP address, especially when an app user like Plaintiff voluntarily transmits this information to a third-party company. *See, e.g., United States v. Rosenow,* 50 F.4th 715, 738 (9th Cir. 2022) ("[A] defendant ha[s] no expectation of privacy in . . . IP addresses or basic subscriber information because internet users should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information) (citations omitted); *see also Kishnani*, 2025 WL 1745726, at *4 ("[I]t is well established in the Ninth Circuit that there is no legally protected privacy interest in IP

addresses") (citations omitted); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025) (dismissing CIPA claim in part because "the cases are legion holding that a person does not have a legitimate expectation of privacy in an IP address which he voluntarily turned over to a third party in order to access its website"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) ("[T]he court also finds public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator."); Order at 5-6, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742 (Cal. Super. Sept. 9, 2024) ("The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them."). Plaintiff acknowledges that he enabled the sharing of his location with Tagged. *See* FAC ¶ 44. There is a fundamental difference between a pen register installed by the government to track an individual's call patterns without their knowledge and the VGE SDK which collects basic location and device information that Plaintiff knowingly provided to Tagged to use its services.

Plaintiff cannot allege a CIPA violation because Plaintiff has no privacy interest in "dialing, routing, addressing, or signaling information" alone. Plaintiff also cannot allege a CIPA violation based on collection of his allegedly "sensitive" personal information by the VGE SDK, because by definition, a device that collects the contents of a communication is not a pen register. *See Kishnani*, 2025 WL 1745726, at *5 ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply."); *Curiositystream, Inc.*, 2025 WL 2272413, at *5 (same).

2. <u>Holding VGE Liable Under CIPA Would Undermine the CCPA</u>

The inapplicability of CIPA to routine internet technologies like the VGE SDK is further supported by California's recent CCPA, which comprehensively regulates the collection and sharing of user data that Plaintiff complains about in the FAC. *See* Cal. Civ. Code § 1798.140(v)(1) (defining

"Personal information" covered by the CCPA as including "[i]nternet or other electronic network activity information, including . . . information regarding a consumer's interaction with an internet website application"). In compliance with the CCPA, Tagged's Privacy Policy discloses which user data is collected, describes the purpose of any data collection, and responds to requests from consumers to opt out of the collection by turning off cookies or deleting consumer information when asked. *See* Rachman Decl., Exhibit H, § 13(B); Cal. Civ. Code §§ 1798.100, 1798.105, 1798.120. Plaintiff argues that companies like Tagged cannot collect or use consumer data unless a user affirmatively opts in to allow this. *See* FAC ¶ 45. Crucially, however, California's Legislature specifically rejected this opt-in model and instead designed the CCPA as an opt-out consent regime, pursuant to which companies can use and sell data collected from consumers unless a consumer affirmatively opts out.

Adopting Plaintiff's expansive interpretation of CIPA would undermine and contravene the CCPA, which was enacted precisely to regulate the collection of user data. In particular, when describing to the California Senate Judiciary Committee why the CCPA provides for opt-out user consent rather than opt-in user consent, a sponsor of the Act explained that an opt-in consent regime would be burdensome on companies and unnecessary, given that consumers seeking online services from a company understand that they must provide that company with personal information. *See* Cal. Sen., "Media on Demand: Senate Judiciary Committee", at 20:10-21:05 (Mar. 5, 2019), available at https://www.senate.ca.gov/media/senate-judiciary-committee-20190305?format+video. He also explained that an opt-in consent regime could potentially violate companies' First Amendment rights by restricting their ability to disclose information. *See id.* at 21:30-22:45. Plaintiff's CIPA claim must be dismissed because it upsets the California Legislature's careful balancing of policy considerations reflected in the CCPA and would result in arbitrary enforcement given that every website collects IP addresses and other metadata, and California's own government websites use the same tools.[4] *See*

[4] The "CA DMV Wallet" application, currently available on the Google Play Store by the California Department of Motor Vehicles, discloses that it collects and shares data with other companies and organizations, including a user's "[p]recise location" and personal information such as name, address, race, and ethnicity. *See* Google Play, "CA DMV Wallet: Data safety," (last accessed Aug. 7, 2025), available at https://play.google.com/store/apps/datasafety?id=gov.ca.dmv.wallet.

*City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (explaining that a law is impermissibly vague if it authorizes "arbitrary and discriminatory enforcement").

3. The FAC Fails to Adequately Plead a CIPA Violation

The FAC offers three sparse allegations regarding Plaintiff's personal use of Tagged, which reveal only that he (i) downloaded Tagged, (ii) enabled location services to "shar[e] his location with "Tagged," but, despite agreeing to Tagged's TOS and Privacy Policy, he now states that he (iii) did not grant VGE "permission to collect any information" from his device. FAC ¶¶ 43–45. Plaintiff explicitly acknowledges that he willingly provided access to his geolocation information, which undermines his argument that this was surreptitiously collected from him. Moreover, the FAC does not allege that Tagged or VGE actually collected information from Plaintiff, let alone what specific information was collected. Instead, the FAC hypothesizes that Tagged *allows* VGE to collect certain "geolocation" information generally, not that the VGE SDK actually did so when Plaintiff used the Tagged app. *Id.* ¶ 44. For example, the FAC does not allege that Plaintiff made any communications that could have been intercepted while using Tagged. *See Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (dismissing CIPA wiretapping claim where plaintiff's "allegations about her own interactions with the Bloomingdales.com website are sparse" and she alleged only that "she 'visited' and 'accessed' the website"). Nor does the FAC allege that Plaintiff suffered any harm by merely downloading Tagged and enabling location services. *See Xu*, 2025 WL 488501, at *3 (dismissing CIPA complaint that was "sparse on facts particular to [plaintiff]" and failed to allege that he suffered any harm from the collection of his IP address). The FAC's generic allegations are thus insufficient to plead a CIPA violation.

4. Plaintiff's Consent to Tagged's TOS and Privacy Policy Precludes Liability

Even if the VGE SDK amounts to a pen register (which it does not), the FAC's CIPA claim still fails because Plaintiff and anyone else that downloaded the Tagged App consented to the collection of their data. "A provider of electronic or wire communication service may use a pen register . . . (5) [i]f the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b). VGE clearly falls within the scope of this exception. According to the FAC, VGE "collects" user data and transmits this to "[t]housands of developers," thus as alleged, VGE qualifies

as an electronic communication service provider. FAC ¶ 2; Cal. Penal Code § 629.51 (defining electronic communication as "any transfer of signs, signals . . . data, or intelligence of any nature . . . by a wire, radio, electromagnetic, photoelectric, or photo-optical system").

Moreover, Plaintiff affirmatively consented to the collection of his personal information and the transmission of this data to third parties. When Plaintiff downloaded the Tagged App and created an account, he agreed that "[b]y clicking Continue you agree to the **Terms of Service** and **Privacy Policy**" which each bolded phrase containing a hyperlink to the relevant document. *See* Rachman Decl., Exhibit B. The Tagged Privacy Policy informed Plaintiff that Tagged "may collect personal information directly from you" and that Tagged may then "disclose the personal information we collect" to third parties with including "Brands, Affiliates, and Subsidiaries", "Business Partners", "Vendors and Services Providers", "Other TMG Users", and "Third Party Marketing and Analytics Providers." Rachman Decl., Exhibit H, §§ 2, 4. By agreeing to create an account with Tagged, Plaintiff thus consented to the transmission of his data to third parties, including VGE and other affiliates. *See Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1052, 1058 (N.D. Cal. 2024) (holding that plaintiff's consent to defendant's Terms of Use, Terms of Sale and Privacy Policy precluded liability under CIPA's wiretapping provision). Accordingly, Plaintiff's CIPA claim should be dismissed for this reason as well.

### C. The FAC fails to State a CDAFA Claim Because It Insufficiently Pleads the Requisite Acts, Access, and Damages.

CDAFA is an anti-hacking criminal statute that prohibits several distinct acts that together create liability. Plaintiff brings his CDAFA claim under three subsections, §§ 502(c)(1), (2), and (7), which respectively penalize any person who: "[k]nowingly accesses and without permission […] uses any data, computer, computer system, or computer network in order to […] wrongfully control or obtain money, property, or data"; "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network[;]" and "[k]nowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network." Cal. Penal Code §§ 502(c)(1), (c)(2), (c)(7). In addition to the fact that VGE's collection of information is *with users' knowing permission*, Plaintiff's CDAFA claim fails for numerous other

reasons.

***Acts*****:** The FAC is deficient because it relies on the same minimal set of facts to support three different subsections of Cal. Penal Code § 502, even though those subsections prohibit different conduct. Plaintiff alleges that VGE allegedly "accessed" Plaintiff's computer systems "because it gained entry to and/or causes output from [his] mobile device[] to obtain geolocation information and personal information." (*See* FAC ¶ 64). Critically, Plaintiff fails to describe (1) how VGE did so without Plaintiff's permission, particularly in light of the Tagged Privacy Policy and TOS disclosures, (2) how VGE wrongfully obtained money, property, or data, (3) or how VGE copied or made use of data from a computer system. As such, the FAC does not put VGE on fair notice of what conduct is at issue, given that "[l]iability under Section 502(c) turns on an analysis of the specific 'acts' that are alleged to constitute an offense[.]" *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024); *In re Ethereummax Inv.*, 2023 WL 6787827, at **14-15 (C.D. Cal. June 6, 2023) (dismissing a "kitchen-sink claim" in which the plaintiff alleged that the defendants were "liable under four different subsections of 25400(b)-(e), without differentiating among the sections").

***Knowing Access***: Each subsection of Cal. Penal Code § 502 requires Plaintiff to adequately allege that VGE itself "knowingly accessed" Plaintiff's device, but the FAC's single conclusory allegation in ¶ 64 concerning VGE's alleged "access" merely restates the statute's basic pleading requirements. Otherwise, the FAC lacks sufficient factual allegations detailing how VGE allegedly "accessed" Plaintiff's device. Plaintiff also does not allege any facts suggesting that VGE "knowingly" engaged in prohibited conduct—nor can he given that VGE contractually required Tagged to use VGE's software lawfully and with informed user consent. *See* Guinto Decl. ¶¶ 6-9, Exhibit 1 §§ 5.4, 7.1, Exhibit 2 §§ 6(1), 6(4). Accordingly, Plaintiff's second cause of action should be dismissed as insufficiently pleaded. *See, e.g., Heiting v. Taro Pharms. United States, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023) (dismissing CDAFA claim because plaintiff alleged only that she chatted with defendant and "d[id] not make clear how any 'access' [by defendant] took place"); *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260-61 (N.D. Cal. 2022) (holding that a third party's "logging and sending" data from users during their "normal use" of Meta's website was insufficient to establish "access" under CDAFA); *Spy Dialer, Inc. v. Reya LLC*, 2018 WL

3689554, at *1 (C.D. Cal. July 26, 2018) ("[D]efendants can generally only be held liable [under CDAFA] where they 'knowingly' . . . engage in prohibited conduct.").

Plaintiff's Cal. Penal Code § 502(c)(7) claim additionally fails because Plaintiff does not allege that VGE circumvented technical or code-based barriers to "access" his device. Subsection (c)(7) concerns hacking and criminalizes those who access a computer "without permission." *See* Cal. Penal Code § 502(c)(7). Courts have recognized that this subsection requires a plaintiff to plead more than just a lack of consent. *See, e.g., Bui-Ford,* 2024 WL 694485, at *5 (holding that plaintiffs' claims for violations of Subsection (c)(7) failed because "they do not plead that [defendant] overcame any technical or code-based barriers to access Plaintiffs' computers"). Here, Plaintiff alleges that he himself intentionally and voluntarily downloaded the app. *See* FAC ¶ 43. Even if his choice to do so was simply to manufacture a claim for a bare statutory violation, he necessarily agreed to the linked Tagged Privacy Policy and TOS, through which he *granted* Tagged and its third party vendors' permission to collect data.

***Damages***: Plaintiff lacks statutory standing to bring a claim under Cal. Penal Code § 502 because he fails to plead that he "suffer[ed] damage or loss" due to VGE's purported criminal violation. *See* Cal. Penal Code § 502(e)(1). Plaintiff's only allegations concerning injury are that VGE "occupied Plaintiff's… storage space on [his] device[] without authorization", "caused data to be output from Plaintiff's…mobile device[] over [his] cellular data plan", "used computer resources of the device", and VGE was "unjustly enriched and profited from the data taken from Plaintiff." FAC ¶ 65. The "majority of courts to consider the issue," have found "that the CDAFA's private right of action contemplates some damage *to the computer system, network, program, or data* contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Taro*, 709 F. Supp. 3d at 1021 (emphasis added) (*citing* Cal. Penal Code § 502(e)(1)); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing the plaintiffs' CDAFA claim because they "offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" is 'damage or loss' within the meaning of the CDAFA") (citations omitted); *see also Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (Cal. App. 2d Dist. 2022) (denying appellants' unfair competition law claim for the

"lost value" of personally identifiable information because "[appellants] did not allege they ever attempted or intended to participate in this market, or otherwise to derive economic value from their PII"). Here, Plaintiff does not allege any actual damage to his device, even if he alleges that code occupied his device. Plaintiff additionally fails to detail how allegedly causing data to be output from his device, or using "computer resources" from his device, caused him any damage or loss. Moreover, Plaintiff alleges that his data was "taken" by VGE, but as discussed above, it was instead voluntarily passed by Plaintiff to Tagged with the knowledge that it would be passed to VGE, and others.

As to Plaintiff's claim of unjust enrichment under CDAFA, this is also entirely unsupported. Through a series of selectively quoted and misleading screenshots from webpages discussing VGE's software products, Plaintiff theorizes that an unnamed number of third parties allegedly "benefit" from VGE data, a list that "may include advertising agencies, Fortune 500 companies, advertising platforms, and even government agencies." FAC ¶ 37. This is entirely conclusory, speculative, and an insufficient basis to plead that VGE was unjustly enriched at Plaintiff's expense. As such, Plaintiff lacks standing and the CDAFA claim must be dismissed.

## V. ARGUMENT TO COMPEL ARBITRATION

### A. Plaintiff Agreed to Tagged's Binding Arbitration Agreement.

Plaintiff entered into a valid arbitration agreement when he agreed to Tagged's TOS as the TOS contains an arbitration provision. In deciding whether there is an agreement to arbitrate, "federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citations omitted). Applying California law herein,[5] the formation of a contract requires a mutual manifestation of assent. *See Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1013-14 (9th Cir. 2024). A sign-in wrap agreement like the TOS is enforceable "if the website provides reasonably conspicuous notice of the terms, and the consumer takes some action that unambiguously manifests assent to those terms." *Id*. at 1014 (*citing Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

---

[5] Plaintiff affirms in the FAC that he is a "citizen of the State of California." *See* FAC ¶ 6. As Plaintiff alleges that he is a citizen of California, California law applies to the question of whether he entered into an agreement to arbitrate. *See Lara v. Onsite Health, Inc.,* 896 F. Supp. 2d 831, 838 (N.D. Cal. 2012).

As explained in Section II.B, *supra*, Tagged provides users with conspicuous notice of the Tagged TOS and its arbitration agreement. The Tagged TOS further provides clear notice that it includes an arbitration requirement. *See* Rachman Decl., Exhibit D, § M. Courts regularly enforce similar agreements. *See Keebaugh*, 100 F.4th 1005 at 1021; *see also Kroskey v. Elevate Labs, LLC*, 2025 WL 1507091, at *1, **3-5 (N.D. Cal. May 27, 2025). Indeed, in the context of a similar class action complaint alleging CIPA and CDAFA violations filed the same day as the FAC by Plaintiff's counsel, a court in this district recently held that, by downloading the mobile app at issue and proceeding through a consent flow process analogous to the Tagged Consent Flow, the plaintiff entered into a binding arbitration agreement contained in the mobile app's operative terms of service. *See Bender v. Twilio Inc.*, 2025 WL 2308484, at **1-5 (N.D. Cal. Aug. 11, 2025) (Martínez-Olguín, J.).

**B. Plaintiff Delegated Questions of Arbitrability and Scope to the Arbitrator.**

Any questions Plaintiff may raise regarding the arbitrability or scope of the arbitration agreement in the Tagged TOS is reserved for the arbitrator. Where the parties to an arbitration agreement "clear[ly] and unmistakab[ly]" agree that an arbitrator will decide gateway issues, the arbitrator decides those issues. *Henry Schein, Inc.*, 586 U.S. at 69 (citations omitted). The Supreme Court has found that courts must enforce an "agreement to arbitrate threshold issues." *Rent-A-Center, W., Inc.*, 561 U.S. at 68-70. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 68.

Here, Plaintiff clearly delegated issues of arbitrability to the arbitrator. The arbitration agreement in Tagged's TOS states that "[a]ll issues shall be for the arbitrator to decide, including the scope of this Arbitration Agreement." *See* Rachman Decl., Exhibit D § M. This reflects a clear agreement to delegate to an arbitrator any questions regarding whether the arbitration agreement can be enforced or whether it applies to the dispute. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1207-08 (9th Cir. 2016). Plaintiff agreed to this provision (*see* Section II.B, *supra*), and the Court should enforce the same.

### C. Even in the Absence of Delegation Language, this Court Should Find that the Arbitration Agreement Encompasses Plaintiff's Claims.

Even if Plaintiff had not agreed to delegate arbitrability questions, the Court should still compel arbitration because Plaintiff's claims fall within the scope of the arbitration agreement. In the absence of delegation language, courts consider whether "(1) a valid agreement to arbitrate exists between the parties and (2) the scope of the agreement encompasses the claims." *Fli-Lo Falcon, LLC*, 97 F.4th at 1194 (citation omitted). Both requirements are satisfied here because Plaintiff agreed to the arbitration agreement in the Tagged TOS (*see* Section II.B, *supra*) and the claims in the FAC are the exact claims Plaintiff agreed to arbitrate.

By agreeing to the Tagged TOS, Plaintiff agreed to individually arbitrate any dispute relating to his use of the Tagged App. *See* Rachman Decl., Exhibit D, § M. Tagged's arbitration provision covers any "Dispute", defined to include "any dispute, claim, or controversy between you and Tagged regarding any aspect of your relationship with Tagged, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, gross negligence or reckless behavior), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Agreement (with the exception of the enforceability of the Class Action Waiver in this Arbitration Agreement)." *Id.* Plaintiff's claims fall squarely within the scope of this arbitration clause because they arise out of Plaintiff's use of the Tagged App, which is necessarily governed by the Tagged TOS and Privacy Policy. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1131 (9th Cir. 2000) ("Resolution of the dispute would require an analysis of the [contract terms]," meaning "[t]he dispute unquestionably arises out of or relates to [its] construction"). Thus, Plaintiff entered into a valid and enforceable arbitration agreement that covers this lawsuit.

### D. VGE is Entitled to Enforce Plaintiff's Arbitration Agreement with Tagged as a Non-Signatory under California's Doctrine of Equitable Estoppel.

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota*

*Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). "[S]tate law [may] allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009) (citations omitted); *see also Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045 (9th Cir. 2009) ("[g]eneral contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories."); *Kroskey*, 2025 WL 1507091, at **4-5 (allowing nonsignatory defendant MindSnacks to enforce arbitration clause included in co-defendant's terms of service "under ordinary contract and agency principles" in part because MindSnacks was an "affiliate" of the co-defendant and plaintiff's claims against both arose from "identical conduct").

California's doctrine of equitable estoppel permits a non-signatory defendant to compel a plaintiff to arbitrate when either: (1) " the claims [against the nonsignatory] are intimately founded in and intertwined with the underlying contract" (*Herrera v. Cathay Pac. Airways Ltd.*, 104 F. 4th 702, 707 (9th Cir. 2024)) (citations omitted); or (2) "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement" (*id*. at 707 n.5.) (citations omitted). Moreover, Plaintiff cannot "bypass" or "sidestep[]" his agreement to arbitrate this dispute by tactically suing VGE and not Tagged. *See Franklin v. Cmty. Reg'l Med. Ctr.,* 998 F.3d 867, 875 (9th Cir. 2021); *Young v. ByteDance Inc.,* 700 F. Supp. 3d 808, 814 (N.D. Cal. 2023). This implicates fairness, which is the "linchpin" of equitable estoppel. *See Herrera,* 104 F.4th at 710.

As discussed more fully below, the circumstances for applying equitable estoppel to permit VGE to compel arbitration of Plaintiff's claims are present here.

1. <u>Plaintiff's claims are intertwined with his contract with Tagged because they require interpretation of the Tagged Privacy Policy.</u>

When making the determination of whether a plaintiff's claims against a non-signatory are intimately founded in and intertwined with the rights and obligations set forth in the agreement containing the arbitration clause, courts look to "the relationships of persons, wrongs, and issues" alleged in the complaint, *even if* a plaintiff does not reference the underlying contract containing the arbitration agreement. *Franklin*, 998 F.3d at 871. The purpose of "examining the facts alleged in the

complaint" in this manner is to determine "whether they *rely or depend on* the terms, duties, or obligations in the contract containing the arbitration provision in asserting the claims." *In re Pac. Fertility Ctr. Litig.,* 814 F. Appx. 206, 209 (9th Cir. 2020) (emphasis added). It does not matter if some of those allegations do not rely on the underlying contract. *See Herrera,* 104 F.4th at 710 ("California law does not require that every allegation in the complaint be intertwined with the contract containing the arbitration clause for equitable estoppel to apply."). Thus, to establish intertwinement, VGE need only demonstrate that this Court would need to interpret the disclosures set out in the Tagged Privacy Policy in order to adjudicate the dispute between Plaintiff and VGE. *See id.* at 710-11; *Franklin,* 998 F.3d at 876; *In re Pac. Fertility Ctr. Litig.,* 814 F. App'x at 209. Under this framework, Plaintiff's claims are clearly intertwined with his contract with Tagged.

Each of Plaintiff's claims requires him to prove that Tagged failed to disclose that it may share the information it collected from him with third parties like VGE. First, regarding Plaintiff's CIPA claim for a violation of California's pen register law, a provider of electronic or wire communication service may use a pen register "[i]f the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(5). Second, CDAFA prohibits "knowingly access[ing] and without permission" taking certain actions with respect to data, which applies to all three subsections under which Plaintiff alleges violations. *See* Cal. Penal Code §§ 502(c), (c)(1)–(2), (7). Accordingly, to prove his CDAFA claim, Plaintiff must demonstrate that VGE accessed and obtained his information "without permission." Indeed, Plaintiff alleges that he did not know, consent, or authorize Tagged to share his information with third-party vendors like VGE in support of each of his privacy claims. *See* FAC ¶¶ 53-59 (CIPA claim), 60-66 (CDAFA claim). Thus, Plaintiff's privacy claims each turn on whether Tagged disclosed and Plaintiff consented to and authorized the sharing of his data with VGE.

These allegations cannot be evaluated without interpreting the contract between Tagged and Plaintiff—consisting of the Tagged TOS and Privacy Policy—which describes in detail the privacy rights of Tagged users and Tagged's privacy obligations. *See* Rachman Decl., Exhibits D and H. As discussed in Section II.C, *supra*, Tagged's Privacy Policy discloses that Tagged may share customer information with "vendors and service providers who perform functions on our behalf, such as IT and website hosting, payment processors, marketing and marketing research providers, customer support,

data storage, data analytics providers, auditors, consultants, advisors and agents, and legal counsel." Rachman Decl., Exhibit H, at § 4. Tagged's Privacy Policy describes when it collects user information, including when "[users visit] of our website where this Policy is posted, including any of our websites that link to or post this Policy"; "individuals who download and use our mobile applications"; "individuals [] register for or participate in our events, surveys, research, promotions, and sweepstakes conducted by us", and "individuals who communicate or otherwise interact or engage with us or the services available through our Sites, Mobile Apps, or other online services." *See id.* at § 1.

Plaintiff cannot succeed on any of his privacy claims if it is determined that the Tagged Privacy Policy adequately discloses that Tagged may share his personal information with third-party vendors like VGE. Indeed, Plaintiff's claims cannot be evaluated or understood at all without analyzing the data-usage disclosures in the Tagged Privacy Policy. Thus, VGE is entitled to enforce the Tagged arbitration agreement against Plaintiff in this lawsuit under the equitable estoppel doctrine.

Courts in this District have held that intertwinement exists under similar circumstances. Recently, in *Hunt v. Meta Platforms, Inc.,* the court granted Meta and Google's motions to compel individual arbitration on equitable estoppel grounds. *See* 735 F. Supp. 3d 1133, 1138-39 (N.D. Cal 2024). There, the plaintiff alleged that H&R Block (an online tax-preparation service) shared his personal tax information with Meta and Google (internet advertisers) for advertising purposes. *Id*. at 1135-36. The plaintiff asserted civil RICO claims against all three companies, including wire fraud claims. *Id.* at 1136-37. The merits of plaintiff's civil RICO claims against all three companies, including wire fraud claims, turned on whether H&R Block disclosed to its customers in its privacy policy that it could share their information with third parties like Meta and Google. *Id.* at 1137.

Meta and Google moved to enforce plaintiff's arbitration agreement with H&R Block on the same equitable estoppel grounds as VGE is now asserting, arguing that the plaintiff's claims were intertwined with the disclosures in the H&R Block Privacy Policy. *Id.* at 1136. The court agreed in full, holding that because the plaintiff's claims required him to prove that H&R Block's Privacy Policy did not disclose that H&R Block could share his personal information with Meta and Google, his "claims against Google and Meta by their own terms are closely intertwined with his agreement with

H&R Block." *Id.* at 1137. The Court explained that "the question under California law is whether the claims 'are in *any way* founded in or bound up with the terms'" of the agreement, even if plaintiffs do not formally allege a breach of the agreement or their claims are statutory. *Id.* at 1138 (quoting *Herrera v. Cathay Pac. Airways Ltd.,* 94 F.4th 1083, 1090–91 (9th Cir. 2024) ("[B]ecause the [plaintiff's] claims allege fraud arising from the H&R Block agreements as one of the elements of his RICO claims, those claims are intimately intertwined with the H&R Block agreements (including the incorporated privacy notice)."); *see also Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1184-85 (N.D. Cal. 2013) (granting non-signatories motion to compel arbitration for nearly all of plaintiff's claims because these required interpretation of the terms in that contract, meaning they were plainly intertwined with the contract and equitable estoppel was appropriate); *Airtourist Holdings LLC v. HNA Grp.,* 2018 WL 3069444, at *3 (N.D. Cal. Mar. 27, 2018) (compelling arbitration because "the claims in the complaint are premised upon the construction of the terms and foundational agreements" with the plaintiffs) (citations omitted).

Similarly, in *Bender v. Twilio Inc.*, the plaintiff alleged that defendant Twilio, an SDK provider, violated CIPA and CDAFA by collecting his information via the Calm meditation app ("Calm"). *See* 2025 WL 2308484, at *1 (N.D. Cal. Aug. 11, 2025). The Court held that Twilio could enforce the arbitration agreement that the plaintiff entered into with Calm under an equitable estoppel theory because Calm's operative terms of service and privacy policy included provisions that disclosed Calm's practices for sharing user information with third parties, which were "intimately founded in and intertwined with' [plaintiff's] claims" given that "each of his three causes of action require the defendant's access to, or use of, the information to be unauthorized." *Id.* at **6-8.

Here, just as in *Hunt* and *Twilio Inc.,* Plaintiff's claims are intertwined with the terms and obligations set out in his contract with Tagged, and Plaintiff therefore should be compelled to arbitrate his claims against VGE.

2. <u>Plaintiff's allegations that Tagged and VGE acted jointly to invade his privacy are similarly intertwined with the Tagged Privacy Policy.</u>

The second prong for equitable estoppel also exists here as Plaintiff alleges that a signatory and non-signatory have acted "jointly in furtherance of a common scheme," and the legality of that

scheme must be resolved by looking to the terms of the plaintiff's contract. *See Sanders v. Swift Transp. Co. of Arizona, LLC,* 843 F. Supp. 2d 1033, 1037-38 (N.D. Cal. 2012). Where the signatory is the "principal wrongdoer" that initiated and organized the common scheme with the non-signatory, estoppel is particularly appropriate. *See Carter v. Spiegel,* 2022 WL 126303, at **6-7 (N.D. Cal. Jan. 13, 2022) (compelling arbitration on this basis).

Here, Plaintiff has chosen to not commence a lawsuit against Tagged. Yet the core theory of Plaintiff's case is that Tagged allegedly colluded with VGE to secretly collect and use Tagged users' information for their mutual profit. *See* FAC ¶ 44 ("The developers of the 'Tagged' mobile app have embedded [VGE's] PubNative SDK and other technology or code into their mobile app, allowing Defendants to collect Plaintiff's timestamped geolocation information, device IDs, device fingerprint data, and information about which app(s) he uses on his mobile device"). Plaintiff's allegations are thus rooted in the theory that Tagged and VGE acted "jointly in furtherance of a common scheme" to collect his information. *See Sanders,* 843 F. Supp. 2d at 1037-38. Indeed, it would have been impossible for VGE to engage in the conduct that Plaintiff alleges without Tagged, which Plaintiff alleges hired VGE as a service provider, installing the VGE SDK on its application, configuring the VGE SDK to collect the information Tagged desired, making the relevant disclosures in the Tagged Privacy Policy, and receiving information from its customers. For those same reasons, Tagged, not VGE, is the alleged initiator of Plaintiff's alleged scheme. *See Carter,* 2022 WL 126303, at *6. As alleged, VGE is merely a third-party vendor to Tagged. Given that these allegations of alleged coordinated conduct between Tagged and VGE hinge on whether Tagged properly disclosed that it may share customer information with third-party vendors, evaluating these claims requires interpretation of the Tagged Privacy Policy, meaning equitable estoppel is warranted on these grounds as well.

Courts have found that equitable estoppel is warranted when similar allegations of concerted misconduct are at issue as are present in this action. *See Salas v. Universal Credit Servs., LLC*, 2019 WL 1242448, at *4 (S.D. Cal. Mar. 18, 2019) (finding that the allegations of "interdependent conduct" by the defendants' with respect to their sharing of the plaintiff's credit report were "intimately connected to the obligations" set out in the plaintiff's contract with the signatory); *Coinmint, LLC v.*

*DX Corr Design, Inc.*, 2023 WL 9595893, at **4-5 (N.D. Cal. Apr. 24, 2023) (granting the non-signatory defendants' motion to compel arbitration on equitable estoppel grounds, finding that allegations against them were "grossly intertwined" with the plaintiff's claims against the signatory, who "feature[d] prominently in the Complaint"); *Hunt,* 735 F. Supp. 3d at 1138 (finding that the plaintiff "alleged concerted misconduct" between H&R Block, Meta, and Google that was "undoubtedly connected to [his] underlying agreement with H&R Block"). Accordingly, the second prong for equitable estoppel is also met here and warrants granting of VGE's motion to compel arbitration.

### E. The Court Should Stay This Action Pending Resolution of Arbitration.

If the Court declines to dismiss Plaintiff's FAC but grants VGE's motion to compel arbitration, VGE alternatively requests a mandatory stay of this action pending resolution of individual arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri,* 601 U.S. 472, 478 (2024) (discussing 9 U.S.C. § 3). Thus, in the alternative to dismissal of the action, a stay is proper here pending resolution of arbitration of plaintiff's claims.

## VI. CONCLUSION

VGE respectfully requests that the Court dismiss this entire action with prejudice, as any amendment would be futile. Alternatively, VGE respectfully requests that the Court grant its motion to compel individual arbitration and stay this action pending resolution of that arbitration.

Dated: August 15, 2025

Respectfully submitted,

DAVIS+GILBERT LLP

/s/ *Marc J. Rachman*

Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
1675 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant*
*Verve Group Europe GMBH*