Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Pro hac vice admission to be sought*

*Counsel for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

ALEX WOODS, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

VERVE GROUP EUROPE GMBH, a German limited liability company,

*Defendant*.

Case No.: 5:24-cv-04909-PCP

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF VERVE GROUP EUROPE GMBH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, COMPEL ARBITRATION, AND STAY ACTION**

**Hearing Date: November 19, 2025**
**Hearing Time: 9:00 a.m.**
**Judge: Noël Wise**
**Hearing Location: San Jose Courthouse, Courtroom 3, 5th Floor**

In connection with its motion to dismiss, Defendant Verve Group Europe Gmbh ("Verve" or "Defendant") requests that the Court take judicial notice of a variety of webpages and private contractual documents or deem such documents as having been incorporated in Plaintiff Woods's First Amended Complaint, ECF No. 20 ("FAC"). Each request should be denied as set forth below:

**Exhibit A** to the Rachman Declaration (ECF No. 45-2) is a series of screenshots purporting to show what is displayed within the Google Play Store when an Android device user searches for the Tagged App and clicks on certain links (which Verve calls the "Tagged Consent Flow"). Verve contends that these screenshots are judicially noticeable "because they are all publicly-available app and/or webpages and their authenticity is not subject to reasonable dispute." (Def.'s Req. for Judicial Notice at 5, ECF No. 45 ("Def.'s Req.").) But Verve fails to show that this is the page flow that Woods would have seen when he downloaded the Tagged App. The Rachman Declaration states only that screenshots depict what Verve's lawyer saw on October 18, 2024—after Mr. Woods downloaded the Tagged App.[1] (Rachman Decl. ¶ 2, ECF No. 45-1.) As this document is introduced to show that Woods consented, that flaw should doom the request for judicial notice. *See In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2010) (denying request for judicial notice when it was not clear whether submitted versions of webpages were actually viewed by the plaintiff); *see also Davis v. Meta Platforms, Inc.*, No. 2:23-cv-01352-APG-BNW, 2024 WL 3293644, at *7 (D. Nev. July 3, 2024) (denying request to take judicial notice of websites because the court could not "accurately and readily determine that the webpages have remained unchanged since Davis visited the Nevada DMV website").

Verve also asserts that this document is incorporated by reference into the FAC, as Woods alleges that he used the Tagged App but did not authorize data collection and sharing. (*See* FAC ¶¶ 44–45.) Verve is incorrect. Verve contends that the Tagged Consent Flow screenshots "underpin Plaintiff's allegations." (Def.'s Req. at 6.) But that characterization misconstrues the FAC, which is concerned not with what Tagged does, but with what *Verve* does. Second, references to a lack of consent do not incorporate by reference any document in which the plaintiff might conceivably have provided consent, as persuasively explained in *Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1179–81 (N.D. Cal. 2024). Rejecting a materially identical argument, the *Turner* court held that because the plaintiff's claim could be assessed based solely on the face of the

[1] The original complaint (ECF No. 1) was filed August 8, 2024, before Verve's attorney avers that he captured what he claims are the Tagged Consent Flow screenshots.

complaint, it was inappropriate to incorporate documents that the complaint did not itself reference. *Id.* at 1180. The same is true here. *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (holding that if a document not referenced in complaint "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint").

Verve's attempt to liken the case at bar to *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005), a defamation action, falls short. (Def.'s Req. at 7.) Though the Ninth Circuit explained in *Knievel* that a document may be incorporated by reference in "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document," Woods's claim in no way depends on the Tagged Screen Flow from the Google Play Store, and Woods challenges its authenticity as it was captured by Verve's lawyer after Woods downloaded the Tagged App. 393 F.3d at 1076. And Verve's reliance on *Laatz v. Zazzle, Inc*. is similarly misplaced. There, the plaintiff's fraud claims were founded on "Alkhatib's representations (or lack thereof) made by signing up for a Creative Market account." 682 F. Supp. 3d 791, 804 (N.D. Cal. 2023). That is a far cry from the instant matter, as Woods does not rely on any representations made during the so-called Tagged Consent Flow to form the basis for any of his claims.

Both cases teach that when the document at issue is what makes the defendant's conduct potentially actionable or not, for instance, when it is part of an allegedly defamatory communication or an alleged misrepresentation, it is not error to consider the whole document or representations. But that is not the case here. The statements in the Tagged Consent Flow (assuming for the moment that Verve has identified the correct source material) are not what makes Verve's conduct actionable. Instead, it is Verve's actual conduct—in writing the code that intercepts and siphons off the relevant data and then combines that data on the back end to compile detailed consumer profiles—that forms the basis for Plaintiff's claims. That those *actions* may be described in a document somewhere doesn't mean that the *document* forms the basis of Woods's claims. There is no basis to consider the screenshots incorporated by reference.

In short, no grounds are present for taking judicial notice of the Tagged Consent Flow or for finding such documents incorporated by reference into the FAC.

**Exhibit B** to the Rachman Declaration (ECF No. 45-3) is a supposed screenshot of the Tagged App Log-in Page, suffers from the same flaws as Exhibit A: there is nothing to suggest that the screenshot accurately reflects what Mr. Woods saw. (*See* Rachman Decl. ¶ 4 (admitting that the screenshot was taken on October 18, 2024).) Similarly, the document is not referenced in the FAC, and there is no basis to consider it incorporated by reference.

**Exhibit C** to the Rachman Declaration (ECF No. 45-4) should be disregarded at this time for the same reasons as set forth with respect to Exhibits A and B. Though Rachman claims it is a screenshot of the Tagged App Registration Page that is shown when a user clicks "Continue with Google", there is nothing to substantiate that this is what Mr. Woods would have seen when he downloaded the Tagged App. Again, the screenshot is from October 18, 2024—after the date Woods downloaded Tagged. (*See* Rachman Decl. ¶ 5.)

**Exhibits D, E, F, and G** to the Rachman Declaration (ECF Nos. 45-5, 45-6, 45-7 and 45-8) supposedly represent excerpts from the Tagged Terms of Service published July 23, 2024; April 18, 2024; December 8, 2023; and September 15, 2023, respectively. (Def.'s Req. at 3–4.) There is nothing to suggest that Mr. Woods ever saw these supposed excerpted versions of the Tagged App Terms of Service ("TOS") or ever agreed to terms that incorporated them. The FAC alleges that Mr. Woods's activity on the Tagged App occurred within the year preceding its filing, thus negating any potential relevance with respect to Exhibit G. Further, the FAC does not reference any version of Tagged's TOS, and there is no reason to consider them incorporated by reference.

The unpublished decisions Verve cites, *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) and *Hammerling v. Google, LLC*, No. 22-17024, 2024 WL 937247 (9th Cir. Mar. 5, 2024), are inapposite. In *Smith*, the Plaintiffs did "not dispute that their acceptance of Facebook's Terms and Policies 'constitutes a valid contract.'" *Smith*, 745 F. App'x at 8. No such admission has been made here with respect to the Tagged TOS, let alone with respect to Verve's ability, as a third party, to enforce such provisions. And in *Hammerling*, the court explained that Google's Privacy Policy

had "unambiguously disclose[d] Google's collection of user activity data in third-party apps." 2024 WL 937247, at *2. Verve has failed to point to any similarly unambiguous disclosures set forth in Tagged's TOS that clearly disclosed Verve and its data collection.

The Ninth Circuit distinguished both *Smith* and *Hammerling* in *Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024). The *Calhoun* panel explained that the central inquiry is "whether a reasonable user reading [the disclosures] might believe they were consenting to certain practices." 113 F.4th at 1151. Whereas in *Smith* and *Hammerling* the challenged data-sharing had been unambiguously set forth in the policies, in *Calhoun* the supposed terms were arguably unclear to a reasonable consumer. And that is precisely what Woods alleges here:

> [W]hen enabling location services within an app—for example a dating app or a weather app that necessarily requires the consumer to share his or her location *with the app*—[a] consumer grants consent *for only the mobile app* to use his or her location. At no point does Verve inform consumers that its SDK and other technology or code is collecting their sensitive geolocation data, nor does it prompt consumers to grant Verve permission to access or collect any data whatsoever.

(FAC ¶ 20.) (Emphasis in original.) As such, none of Plaintiff's allegations rely on Tagged's TOS or Privacy Policy, and Plaintiff did not incorporate them by reference.

Lastly here, to the extent the excerpted versions of Tagged's TOS are subject to judicial notice, the Court can merely consider their existence—the statements contained in the excerpts cannot be assumed true. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1195 (N.D. Cal. 2024) ("Second, Google seeks judicial notice of two other pages on its website that discuss Google Analytics. This request is similarly granted, but notice is again limited to the existence of these documents. The Court cannot conclude that these documents . . . accurately characterize how Google's tools operate."). Hence, even if the Court determines that the TOS excerpts are judicially noticeable, it cannot find that they accurately describe Verve's data collection and profile-building.

**Exhibits H, I, J, K, and L** to the Rachman Declaration (ECF Nos. 45-9, 45-10, 45-11 and 45-12) (excerpts from the Tagged Privacy Policy) suffer largely from the same issues as those plaguing Exhibits D through G. And there is nothing to suggest that Woods ever saw the excerpted Privacy Policy or ever agreed to terms that incorporated it. The Complaint does not reference

Tagged's Privacy Policy, and there is no basis to consider it incorporated by reference. However, to the extent the Court takes judicial notice of the Privacy Policy excerpts, they may not be considered for their truth.

*Garcia v. Enterprise Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015), cited by Verve (Def.'s Req. at 7) is off point. The court in that case rejected the plaintiff's allegations (with leave to amend) that he never agreed to the collection of his data because "Plaintiff necessarily had to agree with Zimride's TOS and Privacy Policy, *which clearly state that such information may, in fact, be disclosed*." *Garcia*, 78 F. Supp. 3d at 1136 (emphasis added.) That is not the case here, where the Tagged Privacy Policy never identified "Verve" and was decidedly unclear with respect to the scope of such disclosures. Further, *Garcia*'s formulation of the standard has since been called into question for its failure to account for the degree to which a pleading must refer to the materials sought to be incorporated. *See Turner*, 735 F. Supp. 3d at 1180 ("*Garcia* was decided before *Khoja*[, 899 F.3d 988] clarified the proper standard for judicial notice and is not binding on this court.")

Similarly, Verve's citation to *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 868 (N.D. Cal. 2022) offers it no support. Unlike here, the authenticity of certain disclosures was never challenged by the plaintiff in *Al-Ahmed,* Woods does not rely on them in stating his claims, and the terms lack clarity with respect to the challenged collection, disclosure, and profile-compiling.

The Court should therefore decline to find the FAC incorporates the excerpted Privacy Policies by reference.

**Exhibits M and N** to the Rachman Declaration (ECF Nos. 45-14, 45-15) purport to be contracts executed between The Meet Group, Inc. (operator of the Tagged App) and Verve's supposed predecessor, PubNative GmbH.[2] There is no reasonable argument that these documents, private contracts between the defendant and a third party, are subject to judicial notice. Verve contends that the Software Contracts are subject to judicial notice because "they can be accurately

[2] The only support for this cited by Verve is the Declaration of John Nicolas Guinto (ECF No. 44-1 n.1).

determined from VGE's business records and are not reasonably subject to dispute." (Def.'s Req. at 6.) But that is nonsense. Verve's business records are not free from reasonable dispute. Neither Mr. Woods nor the Court has any ability to test whether the documents produced from these records are accurate or complete. *Cf. Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003) (denying request to take notice of private letter sent by counsel, since the letter's authenticity could not be tested, and the facts in the letter were not generally known in the district or capable of ready determination). Admission of a business record into evidence typically requires a showing that the record is produced and kept in the ordinary course of business together with the creation of a record designed to ensure the accuracy and truthfulness of the document, none of which is present here. *See* Fed. R. Evid. 803(6). And while some district courts have said that they may take judicial notice of the fact that a contract is signed, *see, e.g.*, *Hartranft v. Encore Capital Group, Inc.*, 543 F. Supp. 3d 893, 916 n.9 (S.D. Cal. 2021), that rule (if it is even correct) does not appear ever to have been applied other than to contracts between the parties whose existence is undisputed, a materially different situation than the one we have here.

And once again, to the extent these documents are subject to judicial notice, the statements contained in the documents cannot be assumed true. *See Smith*, 735 F. Supp. 3d at 1195 ("Second, Google seeks judicial notice of two other pages on its website that discuss Google Analytics. This request is similarly granted, but notice is again limited to the existence of these documents. The Court cannot conclude that these documents . . . accurately characterize how Google's tools operate.").

Perhaps sensing the issue, Verve insists that the purported contracts are incorporated by reference into the FAC because Woods "makes clear that he is accusing VGE and Tagged of acting in concert" and the "allegations necessarily rely on the VGE Software Contracts." (Def.'s Req. at 8.) Neither is true. The Software Contracts are not quoted or referenced in the FAC, and none of the claims rely on either document. Verve fails to adequately explain how either of these exhibits can be considered incorporated into the FAC. (*See id.* at 8.) It is important to recall that for a document to be considered incorporated by reference, the pleading must "refer[] extensively to the document or

the document forms the basis of the plaintiff's claim" which "should, ordinarily at least, mean more than once." *Khoja*, 899 F.3d at 1002–03 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). As the Ninth Circuit has since explained: "How 'extensively' must the complaint refer to the document? This court has held that 'the mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (explaining further that "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.") Exhibits M and N flunk this test. The FAC makes no mention of either supposed contract at all, let alone multiple references that could be considered "extensive." *See Turner*, 735 F. Supp. 3d at 1180 (explaining that "Under *Khoja*, there are only 'rare instances when assessing the sufficiency of a claim' requires the incorporation of materials that the complaint did not reference at all," and finding "[t]his case is not one of those 'rare instances' because it is possible to assess the sufficiency of Plaintiffs' claims on the face of the complaint. . . . Plaintiffs clearly alleged that they were not aware and did not consent to Nuance's software recording and examining their voices.") (cleaned up citations.)

Hence, Exhibits M and N cannot be considered based on incorporation by reference either.

Dated: October 3, 2025

Respectfully submitted,

**ALEX WOODS,** individually and on behalf of all others similarly situated,

By: */s/ Rafey Balabanian*
*One of Plaintiff's Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Pro hac vice admission to be sought*

*Counsel for Plaintiff and the Putative Class*