Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
**DAVIS+GILBERT LLP**
1675 Broadway
New York, New York 10019
Telephone: (212) 468-4800
Fax: (212) 468-4888

Christopher T. Holland (SBN 164053)
CHolland@HollandLawLLP.com
Clark A. Waldon (SBN 312696)
CWaldon@HollandLawLLP.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Defendant Verve Group Europe GMBH*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

ALEX WOODS, individually and on behalf of all others similarly situated,

*Plaintiff,*

vs.

VERVE GROUP EUROPE GMBH, a German limited liability company,

*Defendant.*

Case No.: 5:24-cv-04909-NW

**REPLY IN SUPPORT OF DEFENDANT VERVE GROUP EUROPE GMBH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, COMPEL ARBITRATION, AND STAY ACTION**

**Hearing Date:** November 19, 2025
**Hearing Time:** 9:00 a.m.
**Judge:** Noël Wise
**Hearing Location:** San Jose Courthouse, Courtroom 3, 5th Floor

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiff Lacks Article III Standing ..... 1

1. Plaintiff Had No Expectation of Privacy in Information That He Voluntarily Shared with Third Parties. ..... 2

2. Plaintiff Had No Expectation of Privacy in Location Information. ..... 5

3. Plaintiff Fails to Allege any Harm That Is Traceable to VGE ..... 7

4. Plaintiff Does Not Have Standing to Seek Injunctive Relief ..... 9

B. Plaintiff Has Not Stated Any Viable Claim Against VGE. ..... 9

1. Plaintiff Does Not Adequately Allege a Pen Register Claim. ..... 9

2. Plaintiff Does Not Adequately Allege a CDAFA Claim. ..... 11

C. VGE Can Enforce the Arbitration Agreement. ..... 13

1. Plaintiff's Arguments Are Barred by the Delegation Clause ..... 14

2. Claims Against VGE Are Arbitrable "Disputes" Under the Tagged TOS. ..... 14

3. VGE Can Enforce the Arbitration Agreement Under Equitable Estoppel. ..... 15

a. Plaintiff Improperly Asks That this Court Ignore Binding Precedent to Create a New Test for Equitable Estoppel. ..... 15

b. Plaintiff's Claims Are Intertwined with the Tagged TOS and Privacy Policy. ..... 16

c. Plaintiff Alleges Interdependent Conduct by Tagged and VGE in Connection with the Tagged TOS and Privacy Policy. ..... 17

4. Plaintiff Does Not Demonstrate Unconscionability. ..... 18

a. The Delegation Clause and Tagged TOS are Not Procedurally or Substantively Unconscionable. ..... 19

III. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
2021 WL 5584759 (N.D. Cal. Nov. 29, 2021) ........ 6, 8, 11

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ........ 14, 18

*Brown v. Google, LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 5

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........ 11

*Carpenter v. United States*,
585 U.S. 296 (2018) ........ 6

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 6

*Daghaly v. Bloomingdales.com, LLC*,
2024 WL 5134350 (9th Cir. Dec. 17, 2024) ........ 7

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 13

*Doe v. Eating Recovery Ctr. LLC*,
22025 WL 2971090 (N.D. Cal. Oct. 17, 2023) ........ 10

*Doe v. Fullstory*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 5

*Edwards v. Mubi, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ........ 9

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010) ........ 12

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 4

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 11

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........................................................................ 12

*Gutierrez v. Converse,*
2025 WL 1895315 (9th Cir. July 9, 2025)..................................................................... 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ................................................................... 11, 13

*Herman v. Brookdale Emp. Servs. LLC*,
2025 WL 306223 (N.D. Cal. Jan. 27, 2025)............................................................ 14, 18

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) ....................................................................................... 15

*Hill v. Nat'l Collegiate Athletic Assn*.,
7 Cal. 4th 1 (1994) ......................................................................................................... 3

*Houghton v. Leshner,*
2024 WL 5154071 (N.D. Cal. Nov. 25, 2024) .............................................................. 18

*Hughes v. Vivint, Inc*.,
2024 WL 5179916 (C.D. Cal. July 12, 2024)................................................................. 8

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024) ........................................................................ 16

*In re Facebook Inc. Internet Tracking Litig*.,
956 F.3d 589 (9th Cir. 2020) ...................................................................................... 2, 6

*In re Facebook, Inc*.,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................ 4

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ..................................................................... 5, 6, 8

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................................................. 13

*In re Meta Healthcare Pixel*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......................................................................... 13

*In re Pac. Fertility Ctr. Litig.*,
814 F. App'x 206 (9th Cir. 2020) ................................................................................. 16

*In re Yahoo Mail Litig*.,
308 F.R.D. 577 (N.D. Cal. 2015)................................................................................... 9

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) .......... 19, 20

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 2, 3

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 6

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 5, 7, 8, 9

*Kyle Atkins v. Amplitude, Inc.*,
2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) .......... 17

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) .......... 5

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015) .......... 19

*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) .......... 3

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......... 11

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*,
501 F. Supp. 3d 965 (D. Or. 2020) .......... 19

*Mitchener v. Curiositystream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) .......... 6, 7, 9

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025) .......... 7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022) .......... 15

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) .......... 15, 16, 18

*Peskin v. Phinney*,
182 Cal. App. 2d 632 (1960) .......... 15

*Phillips v. U.S. Customs & Border Protection*,
74 F.4th 986 (9th Cir. 2023) .......... 2

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ........ 14

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 5

*Rodriguez v. ByteDance, Inc.*,
2025 WL 2495865 (N.D. Ill. Aug. 29, 2025) ........ 10

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal June 5, 2024) ........ 11

*Schneider v. Cal. Dep't of Corrections*,
151 F.3d 1194 (9th Cir. 1998) ........ 8

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 3, 4

*Snyder v. G6 Hospitality LLC*,
2025 WL 2426613 (C.D. Cal. Aug. 18, 2025) ........ 4

*Wooten v. Biolife Plasma Servs. L.P.*,
2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) ........ 7

**Statutes**

9 U.S.C. § 3 ........ 20

Cal. Pen. Code § 638.50 ........ 9

Cal. Pen. Code § 502 ........ 11, 12, 13

**Rules**

FRCP 12(b)(1) ........ 20

FRCP 12(b)(6) ........ 10, 20

## I. INTRODUCTION

Revealing the insufficiency of the FAC, Plaintiff's Opposition (Dkt. 46, the "Opposition" or "Opp.") adds allegations not present in the FAC in a misguided attempt to avoid dismissal. Plaintiff cannot use his Opposition to "fill in the blanks" for his deficient FAC. As alleged in the FAC, the VGE SDK in issue only ***allowed*** VGE to collect from his mobile device his alleged sensitive geolocation and other device data; there is no allegation that VGE actually did collect such data from Plaintiff. Such vague and speculative allegations are insufficient to state a claim against VGE. This is particularly the case given that, through his acceptance of the Tagged TOS and Privacy Policy, Plaintiff consented to Tagged's sharing of his device data with Tagged's business partners such as VGE. Plaintiff only offers speculative assertions in his Opposition about the VGE SDK's ability to track cell phones in a "church, hospital, or even addition recovery center" (Opp. at 4), but the FAC fails to allege any such specific act of tracking of Plaintiff's device data. As it stands, Plaintiff's FAC is devoid of any well-pleaded allegations supporting his claims, and Plaintiff's Opposition fails to sufficiently rebut VGE's Motion to Dismiss (Dkt. 44, the "Motion" or "MTD") or its authorities. For these reasons, and as further detailed below and in VGE's MTD, VGE respectfully submits that the Court should dismiss Plaintiff's FAC.

Plaintiff also takes a scattershot approach to arguing that VGE cannot enforce the arbitration agreement contained in the Tagged TOS. Plaintiff ignores his own allegations in the FAC, ignores recent decisions applying equitable estoppel to substantially similar claims, asks the Court to set aside the accepted test for equitable estoppel applied by the Ninth Circuit and California courts, misstates the Tagged TOS in an effort to claim it is unconscionable, and resorts to broad mischaracterizations about VGE's services. These efforts confirm that if the FAC is not dismissed, then this case belongs in arbitration.

## II. ARGUMENT

### A. Plaintiff Lacks Article III Standing.

Plaintiff does not (and cannot) allege that he suffered any concrete injury, an essential element to establish standing, and concedes that a mere statutory violation alone is not sufficient to establish

standing. Opp. at 3-4. Instead, Plaintiff must allege that he suffered an injury analogous to a "traditionally recognized" privacy injury, which requires that Plaintiff had a "reasonable expectation of privacy" in the information VGE allegedly collected from him and that any intrusion was "highly offensive." *See Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 992, 996 (9th Cir. 2023); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).

However, the FAC fails to allege any such facts. First, as alleged, Plaintiff enabled location services on his mobile device in order to use the Tagged App (FAC ¶ 44), and had no expectation of privacy in his location information because he agreed to disclose it to Tagged and VGE when he signed up to use the Tagged App. Second, Plaintiff had no expectation of privacy in the type of routine geolocation and device information that VGE allegedly collected. Third, Plaintiff fails to allege that his injury was traceable to VGE. He offers no facts indicating that the VGE SDK actually collected ***his*** information; how, when or where such collection of ***his*** information took place; or whether any of ***his*** alleged collected information was sufficiently sensitive such that he suffered a concrete injury. Plaintiff cannot rewrite his FAC, which only broadly alleges VGE's collecting of data of unspecified "unsuspecting consumers" at large. *See* FAC ¶ 3. Fourth, Plaintiff does not have standing to pursue injunctive relief because he has not alleged that he has continued to use the Tagged App or that he plans to do so, meaning there is no plausible threat of future harm.

1. <u>Plaintiff Had No Expectation of Privacy in Information That He Voluntarily Shared with Third Parties.</u>

Plaintiff did not have any expectation of privacy in information that he consented to disclosing to third parties like VGE. *See Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (holding plaintiffs lacked standing to pursue CIPA claims in part because "a person generally has no legitimate expectation of privacy in information he voluntarily turns over to third parties") (citations omitted).[1] As Plaintiff concedes, that is exactly what happened here—he voluntarily

[1] Plaintiff improperly attempts to convert the issue of consent from a standing inquiry relevant to whether Plaintiff had a reasonable expectation of privacy in the information collected by VGE into an affirmative defense inquiry. However, Plaintiff cannot avoid his obligation to establish standing by demonstrating that he suffered an actual privacy injury.

"enabled location services" in order to "shar[e] his location with 'Tagged.'" FAC ¶ 44. Tellingly, Plaintiff does not dispute that the whole point of downloading and using a dating app is to disclose to third parties not only one's whereabouts, but also many of the other categories of allegedly "sensitive information" to which Plaintiff points. *See id.* ¶ 3. The crux of Plaintiff's argument is that VGE's SDK surreptitiously enables collection of his "precise geolocation" information, but in the same breath he acknowledges that he willingly provided such geolocation information to Tagged. *See id.* ¶¶ 44-45. Regardless of whether Plaintiff consented to the Tagged TOS and Privacy Policy, Plaintiff had no reasonable expectation of privacy in information freely provided to third parties like Tagged and other Tagged App users. *See Khamooshi*, 786 F. Supp. 3d at 1179 (no legitimate expectation of privacy in information provided to third parties "even if the information is revealed on the assumption that it will be used only for a limited purpose") (citations omitted); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) (explaining that to establish an invasion of privacy a plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy"); *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025) ("[A] plaintiff cannot have a reasonable expectation of privacy if they consented to the intrusion.").

Plaintiff also fails to dispute that he explicitly consented to the disclosure of his geolocation data ***to VGE***. Tagged's Privacy Policy informs consumers that Tagged "***may collect personal information*** directly from you, ***from third-party sources***, and automatically through your use of our Services . . . [w]e may also disclose your personal information, such as device and browsing, and activities and usage information, ***to third party marketing and data analytics providers***, and other companies who provide marketing, advertising, campaign management, or analytics services on our behalf." *See* Rachman Decl., Ex. H, at §§ 2, 4 (emphasis added). Tagged's Privacy Policy further specifies that it may collect "***precise geolocation data***" from users. *See id.* at § 13(B) (emphasis added).

Courts have routinely dismissed internet tracking cases concerning nearly identical privacy policy disclosures on the grounds that the plaintiffs consented to the collection and dissemination of their information to third parties. For example, in *Silver v. Stripe Inc.*, the court dismissed similar

claims that a defendant improperly collected and used consumer information because the privacy policy at issue stated that the website provider "may disclose [certain] categories of personal information ***to third parties*** for our commercial purposes," including "geolocation data." 2021 WL 3191752, at *2, **4-5 (N.D. Cal. July 28, 2021) (emphasis added) (dismissing CIPA wiretap claims because plaintiffs consented to internet tracking at issue); *see also Snyder v. G6 Hospitality LLC*, 2025 WL 2426613, at **4-5 (C.D. Cal. Aug. 18, 2025) (dismissing complaint alleging CIPA violations and invasion of privacy because defendant's privacy policy disclosed that it would share certain categories of information "with third-party 'Marketing' providers").

Plaintiff's attempts to get around this explicit consent fail. The judicially noticeable Tagged TOS and Privacy Policy clearly demonstrate that Plaintiff consented to the exact data collection practices at issue, which overcome Plaintiff's conclusory assertions that he did not consent. *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) ("Though Plaintiff denies having conferred his consent, the Court need not accept as true any allegations contradicted by matters properly subject to judicial notice or by exhibit . . . .") (citations omitted). For example, Plaintiff does not even attempt to dispute that he was presented with the Tagged Consent Flow, Tagged TOS, and Privacy Policy when signing up to use the Tagged App, nor does he argue that the user interfaces he saw were any different. In fact, Plaintiff offers no facts whatsoever detailing how he downloaded and signed up for the Tagged App. The Court should reject Plaintiff's conclusory efforts to cast doubt on judicially noticeable materials that directly contradict the FAC's conclusory allegations that he did not consent to VGE's collection of geolocation information.

Moreover, there is no basis for Plaintiff's argument that the Tagged TOS and Privacy Policy did not "explicitly notify" him about VGE or the "specific practice" of third parties collecting his geolocation information. *See* Opp. at 8. Plaintiff does not identify any case holding that disclosures like Tagged's were insufficient. Instead, the cases relied on by Plaintiff are distinguishable because they all involved situations where the disclosures at issue either directly contradicted the alleged collection practice or did not address the alleged collection practice at all, unlike in this matter. *See, e.g., In re Facebook, Inc.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019) (disclosure clearly implied that

user information could only be used in limited circumstances, which contradicted practice of selling user information); *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1057-58 (N.D. Cal. 2021) (defendant made statements to consumers that "private browsing mode" allowed users to "limit" the information they shared, but privacy policy did not mention "private browsing mode" at all, so a reasonable user may have assumed that data was not collected from users in private browsing mode); *Doe v. Fullstory*, 712 F. Supp. 3d 1244, 1254 (N.D. Cal. 2024) (disclosures expressly stated that defendant company would not disclose users' personal information which was "the exact type of information [plaintiff] contends was intercepted").

In addition, Plaintiff fails to dispute that he sought out and downloaded the Tagged App to manufacture a CIPA claim, which further demonstrates that he lacks standing. *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025). On the same day that Plaintiff initiated this lawsuit, counsel for Plaintiff filed two similar class action complaints in this District.[2] This serial litigation, coupled with the absence of virtually any facts specific to Plaintiff, indicates that he is one of many "tester" plaintiffs. *See Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 963-64 (C.D. Cal. 2023) (describing plaintiff as a "tester" in part because his counsel filed dozens of "virtually identical lawsuits" alleging CIPA violations and the complaint offered only "boilerplate" allegations).

2. Plaintiff Had No Expectation of Privacy in Location Information.

In addition, regardless of whether Plaintiff consented to VGE's alleged collection of location information, courts have repeatedly held that plaintiffs do not have a reasonable expectation of privacy in mere "location" information alone. *See In re Google Location History Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (holding plaintiff had no legally protected privacy interest in "granular and specific location data" because defendants "only tracked and collected [such] data during use of [defendant app's] services"); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at **1-3 (N.D. Cal. June 24, 2025) (dismissing CIPA claim for lack of standing where plaintiff alleged that defendant "fingerprint[ed]" users by collecting information including "geographic information");

[2] *See Kyle Atkins v. Amplitude, Inc.*, No. 3:24-cv-04913-RFL (N.D. Cal.), filed August 8, 2024, and *Noah Bender v. Twilio Inc.*, No. 3:24-cv-04914-AMO (N.D. Cal.), filed August 8, 2024

*Mitchener v. Curiositystream, Inc.*, 2025 WL 2272413, at **1-4 (N.D. Cal. Aug. 6, 2025) (same); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126-27 (S.D. Cal. 2023) (holding that "collection and disclosure of a user's . . . personal information on a public website," including "user locations", is "routine browsing activity [that does not] rise to the level of 'highly offensive'"); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) ("While some types of [geolocation information] implicate protectable privacy interests, others do not," including "'bits and pieces' of plaintiffs' movements captured only when plaintiffs used defendant's services.") (citations omitted). Plaintiff attempts to distinguish these cases as addressing collection of only "general" geolocation information rather than "precise geolocation" information, but this is unavailing, particularly where, as here, he does not allege how or where his precise geolocation information was collected. *See Khamooshi*, 2025 WL 2822879, at *3 ("Absent specific allegations about the type of browsing and geolocation information disclosed, these categories of information are insufficient to support a concrete privacy injury.").

This case is markedly different from the decisions relied on by Plaintiff where users did not knowingly provide the information at issue to third parties or where defendants continued to collect user location information at all times even when they were no longer using the website or app.[3] *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 (plaintiffs alleged that defendant "continued to collect their data after they had logged off [its] social media platform" ); *Carpenter v. United States*, 585 U.S. 296, 311, 313 (2018) (tracking at issue involved "[m]apping [his] cell phone's location over the course of 127 days which provides an all-encompassing record of the holder's whereabouts"). Plaintiff has not alleged the same degree of constant, unknown surveillance that courts have found may demonstrate an invasion of privacy. *See In re Google Location History Litig.*, 428 F. Supp. 3d at 198.

[3] Plaintiff suggests for the first time in his Opposition that VGE "tracks consumers' precise location at all times," Opp. at 6, but this allegation is nowhere to be found in the FAC and should therefore be disregarded. *See Abuelhawa v. Santa Clara Univ.*, 2021 WL 5584759, at *14 (N.D. Cal. Nov. 29, 2021) ("The Court cannot look to the opposition for new allegations.").

3. <u>Plaintiff Fails to Allege any Harm That Is Traceable to VGE</u>

Plaintiff also cannot demonstrate standing because he does not allege any facts indicating that VGE collected ***his*** sensitive information or how the collection of ***his*** sensitive information took place. Plaintiff offers three scant paragraphs in the FAC alleging "facts specific to Plaintiff," which state only that he "downloaded and used" the Tagged App within the last year, "enabled location services" to do so, and that Tagged "embedded [VGE's] PubNative SDK and other technology or code into their mobile app, ***allowing*** Defendants to collect Plaintiff's timestamped geolocation information, device IDs, device fingerprint data, and information about which app(s) he uses on his mobile device" without Plaintiff's permission. FAC ¶¶ 43-45 (emphasis added). Plaintiff does not allege which (if any) pieces of his collected information were "sensitive." Nor does he provide any details about when or how VGE's SDK collected his information. Instead, the FAC merely alleges that Plaintiff's data could have been collected (i.e., VGE's SDK allowed for this, not that it actually did so) and generally that VGE's "collect[ion] [of] location data reveals sensitive information" regarding consumers more broadly. FAC ¶¶ 3, 44.

But as this Court explained in *Kishnani* and *Curiositystream, Inc.*, generalized allegations about how VGE's SDK ***may*** be capable of collecting or revealing Plaintiff's sensitive information are not sufficient to establish standing. *See Kishnani*, 2025 WL 1745726, at *4 (by asserting only that "Defendants *could* gain 'additional information about [a] visitor . . . and that allegation *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into a concrete harm to *him*.); *Curiositystream, Inc.*, 2025 WL 2272413, at *5 (same); *see also Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) (dismissing CIPA wiretapping claim for lack of standing where plaintiff's "allegations about her own interactions with the Bloomingdales.com website are sparse" and she alleged only that "she 'visited' and 'accessed' the website"); *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801, at **6-7 (C.D. Cal. June 27, 2025) (dismissing CIPA claim for lack of standing in part because she alleged only that the purported trap and trace device 'may be capable of collecting' certain information). Yet another recent decision dismissed similar CIPA pen register claims for lack of standing on these same grounds. *See Wooten v. Biolife Plasma*

*Servs. L.P.*, 2025 WL 2979619, at *4 (E.D. Cal. Oct. 22, 2025) (holding plaintiffs lacked standing because they merely alleged that the "trackers have the ***capability*** to use these pieces of information to engage in ID bridging, which could then result in targeted advertising. . . [b]ut plaintiffs do not allege that . . . they were subject to any such targeted advertising"). As in these cases, Plaintiff does not allege any facts describing when, how, or where VGE's SDK collected his location information, nor that VGE's collection of his location information revealed anything sensitive about Plaintiff. For example, it is entirely possible that Plaintiff downloaded the Tagged App, enabled location services, and opened it one time while sitting in a public place, such as a park or a bus, which would undermine Plaintiff's theory that any sensitive information about his whereabouts was collected. *See In re Google Location History Litig.*, 428 F. Supp. 3d at 198 (no privacy injury because "[p]laintiffs' allegations are far too conclusory and speculative. Without more particular pleading, the Court cannot determine if Defendant extrapolated a 'mosaic' from the user data or if the data collected is 'sensitive and confidential' information . . . It is entirely speculative that geolocation data was ever collected from a [p]laintiff while at a sensitive or confidential location.").

Perhaps recognizing this fatal flaw, Plaintiff improperly stitches together generalized allegations about sensitive information that VGE's SDK ***may*** reveal about "unsuspecting consumers" more broadly, *see* FAC ¶ 3, with Plaintiff's scant allegations specific to him, *see* FAC ¶ 44. But Plaintiff cannot save his deficient FAC by making new allegations in his Opposition. *See Abuelhawa*, 2021 WL 5584759, at *14 ("The Court cannot look to the opposition [to a motion to dismiss] for new allegations.") (citing *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

Because Plaintiff fails to allege any specific facts regarding his use of the Tagged App or VGE's collection of his sensitive information, he has not demonstrated any injury traceable to VGE, which defeats standing. *See Kishnani*, 2025 WL 1745726, at *4; *see also Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (no standing where "[p]laintiff's Complaint is vague as to many, if not all, of the details surrounding her use of the Website and what specific information was captured by [defendant's] Software.").

4. Plaintiff Does Not Have Standing to Seek Injunctive Relief

Plaintiff cannot pursue injunctive relief because he does not allege anywhere in the FAC that he intends to use the Tagged App again. As Plaintiff's own case explains, "courts have held that the 'likelihood of future injury' requirement under Article III may be satisfied where a consumer 'allege[s] that [s]he intends to purchase the products at issue in the future.'" *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 588 (N.D. Cal. 2015). Plaintiff's failure to allege this in the FAC, coupled with the fact that there is no plausible threat of future harm where Plaintiff could have removed the free app from his device at any time, demonstrate that he cannot seek injunctive relief. *See Edwards v. Mubi, Inc.*, 773 F. Supp. 3d 868, 886-87 (N.D. Cal. 2025) (no standing to pursue injunctive relief where "[p]laintiffs have not alleged that they are currently using [the app at issue] or intend to do so in the future").

**B. Plaintiff Has Not Stated Any Viable Claim Against VGE.**

1. Plaintiff Does Not Adequately Allege a Pen Register Claim.

Plaintiff fails to address the fundamental flaw that undermines his CIPA pen register claim: by alleging that VGE's SDK collects "sensitive" consumer data sufficient to confer standing, Plaintiff concedes that it is not a pen register, which only collects information ***about*** a communication rather than the ***contents*** of a communication. *See* Cal. Pen. Code § 638.50(b) (defining "Pen register" as "a device or process that records . . . dialing, routing, addressing, or signaling information . . . ***but not the contents of a communication***") (emphasis added). As this Court explained in *Kishnani* and *Curiositystream, Inc.*, Plaintiff cannot have it both ways. Either VGE's SDK is a pen register, meaning it only collects routine "'metadata' of the communication" and "Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data"; or alternatively, VGE's SDK "collects content information from communication[s] between parties" such as "biographical information," meaning it is not a pen register "and § 638.50 does not apply." *See Kishnani*, 2025 WL 1745726, at *5; *Curiositystream, Inc.*, 2025 WL 2272413, at *5. Because Plaintiff alleges that VGE's SDK collects "sensitive" biographical information from users including their "religious affiliation, sexual orientation, and medical conditions," he concedes that VGE's SDK is not a pen register. FAC ¶¶ 3, 22. Tellingly, Plaintiff's Opposition fails to even address this argument. As a recent decision

emphasized, CIPA "is ill-suited for application to internet communications" and is "virtually impossible to apply [] to the online world"—in other words, it "is a total mess." *See Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1, *6 (N.D. Cal. Oct. 17, 2023); *see also Gutierrez v. Converse*, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) ("In my view, [the CIPA's wiretapping provision's] text, legislative history, subsequent augmentation, and relative ambiguity compared to the CCPA (which explicitly provides recourse for internet privacy violations like this one) compel the conclusion that [its] first clause does not apply to the internet.").

Moreover, the FAC does not adequately plead that VGE collected information from ***him*** in violation of CIPA. As discussed in Section II.A.3, *supra*, the FAC alleges no facts describing the process by which Plaintiff downloaded the Tagged App, when or how he used the Tagged App, or where he used the Tagged App after enabling location services. Moreover, at best, the FAC alleges only that VGE's SDK "allow[ed]" for the collection of Plaintiff's location and device information, not that it actually did so. *See* FAC ¶ 44 (installation of VGE's SDK "allow[ed] Defendants to collect Plaintiff's timestamped geolocation information" and other device information). There are no allegations that VGE's SDK actually collected any of Plaintiff's data. Instead, the vast majority of Plaintiff's allegations describe in hypothetical terms how VGE's SDK may be used to collect information "from unsuspecting consumers" more broadly. *See, e.g.*, FAC ¶ 3 (VGE's SDK "***enables*** backdoor access to ***consumers'*** devices . . . allowing [developers] to siphon data") (emphasis added); *id*. ¶ 57 ("***On information and belief,*** Defendant VGI provides technology or code to customers that is used to collect ***consumers'*** geolocation coordinates . . .") (emphasis added).

These hypothetical allegations, devoid of facts specific to Plaintiff, cannot survive a motion to dismiss. *See, e.g.*, *Rodriguez v. ByteDance, Inc.*, 2025 WL 2495865, at *1, *6 (N.D. Ill. Aug. 29, 2025) (dismissing CIPA wiretapping claim under FRCP 12(b)(6) because "Plaintiffs are asking the Court to make an unreasonable inferential leap. Although the predicate facts alleged describe how an interception *could* occur, plaintiffs do not credibly allege that defendants *in fact* intercepted their communications. The complaint does not allege, for example, how the interception occurred, whose communications were intercepted, or what was contained in those communications."). Nor can

Plaintiff amend the FAC by way of his Opposition to allege for the first time that VGE did in fact "intercept[] and misuse[]" his geolocation and device information. *See Abuelhawa*, 2021 WL 5584759, at *14; Opp. at 15.

2. <u>Plaintiff Does Not Adequately Allege a CDAFA Claim.</u>

***Acts***: The FAC's failure to put VGE on notice of the exact conduct by VGE that supports Plaintiff's CDAFA claim is necessarily fatal. The FAC broadly asserts liability across three different sections of CDAFA, including Cal. Penal Code § 502(c)(1), (2), and (7). *See* FAC ¶¶ 63(a)-(c). Different sections prohibit different conduct, however, and the "analysis necessarily changes across the subsections at issue." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024). For instance, Section 502(c)(1) creates liability for anyone who "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data." Yet, the FAC fails to allege how VGE ever "alters, damages, deletes, destroys, or otherwise uses" Plaintiff's "computer[] and/or computer system[]." *See* FAC ¶ 64. Courts have held that the phrase "otherwise uses" is meant to prohibit conduct "similar to alteration, damage, deletion, or destruction." *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020). Yet, no such conduct has been alleged in the FAC. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090-91 (N.D. Cal. 2018) (dismissing CDAFA claim where plaintiff "parrot[ed]" the language of five different subsections but failed to allege how Uber "violated a particular subsection of the Act").

***Access***: The FAC's only allegations concerning CDAFA's "access" element provide that VGE "accessed" Plaintiff's "computers and/or computer systems" because "it gained entry to and/or caused output from their mobile devices." FAC ¶ 64. This merely rephrases the statute's definition of "access." *See* Cal. Pen. Code § 502(b)(1). Under CDAFA, "[s]uch 'output' must come from the 'logical, arithmetical, or memory function resources of a computer'" (*see Roe v. Amgen Inc.*, 2024 WL 2873482 at *6 (C.D. Cal June 5, 2024) (citations omitted)), yet Plaintiff does not explain how data generated by his use of the Tagged App is considered "output," or how VGE causes such output (*see id.*; *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020 (C.D. Cal. 2023)).

Cal. Penal Code § 502(c) also requires Plaintiff to specifically allege that VGE "knowingly" accessed Plaintiff's device without permission. The FAC only contains conclusory allegations on this element. First, Plaintiff fails to address the substance of the VGE Software Contracts (*see* Guinto Decl., Ex. 1 §§ 5.4, 7.1, Ex. 2 §§ 6(1), 6(4)), which specifically required Tagged to comply with all applicable laws and regulations and obtain user permission to transmit personal data and inform users about data collection. Plaintiff cannot establish that VGE "knowingly" accessed Plaintiff's device without permission in light of Tagged's obligations under the VGE Software Contracts. Second, perhaps recognizing that the FAC fails to specifically allege that VGE knowingly accessed his device, the Opposition now points to FAC ¶ 14 (an allegation that VGE collects data through technology or code) and argues that knowledge "may be alleged generally." *See* Opp. at 17. This statement is not sufficient to allege VGE's "knowing access" to his device sufficient to state a claim under CDAFA. Broad allegations that VGE collected data simply do not suffice to establish a CDAFA claim.

Moreover, Plaintiff must allege facts showing VGE circumvented a barrier to establish that "access" to his phone was done "without permission" under Section 502(c)(7). Plaintiff's argument to the contrary primarily relies on a strawman. Plaintiff cites to *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at **11-12 (N.D. Cal. July 20, 2010) (a case VGE did not cite in its moving papers), in which the Court reasoned that access "without permission" under CDAFA was limited to situations in which a defendant circumvented technical or code-based barriers. *See* Opp. at 16. Plaintiff then strikes this strawman down by noting that other courts have rejected the reasoning in *Power Ventures*, and that "[b]etter reasoned decisions" reject technical or code-based barriers. *See id.* at 16-17. Conspicuously, Plaintiff cites *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) as one of those decisions, but in that case, the Court explicitly discussed circumvention when it noted "Defendant boasts an end-run around Apple's privacy framework."

Plaintiff's allegations here, however, demonstrate why the barrier requirement is necessary and consistently enforced by this Court. Plaintiff alleges that VGE's SDK is embedded within the Tagged App and that he voluntarily downloaded and used the Tagged App containing the code that allegedly "caused output" from his device. FAC ¶¶ 43-44, 64. Nothing about this alleged "access" was

unauthorized. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) ("[O]n Plaintiffs' own allegations, the iOS and third party apps—which contain the alleged 'surreptitious code'—were all installed or updated *voluntarily* by Plaintiffs.").

***Damages***: Plaintiff relies on the FAC's conclusory theory that VGE's SDK "occupied Plaintiff's and the Class's storage space on their devices,[] depleted Plaintiff's cellular plan, and used the resources of his device." Opp. at 18. Notably, the FAC does not allege any *costs* incurred to remedy this alleged improper access. Instead, Plaintiff argues that his allegations are sufficient under *In re Meta Healthcare Pixel*, but he does not allege any "measurable impact on their devices," or even explain *how* VGE's SDK supposedly used his storage, resources, or data. 713 F. Supp. 3d 650, 658 (N.D. Cal. 2024). It is simply not plausible that VGE's SDK "would result in any cognizable reduction in storage, disk space, or performance" apart from the Tagged App itself. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (rejecting similar theories about website cookies).

Further, Plaintiff fails to establish that unjust enrichment is recognizable as a form of "loss or damages" under CDAFA. Section 502(e) authorizes a cause of action for one who "suffers damage or loss by reason of a violation," explaining that "[c]ompensatory damages shall include" expenditures incurred "to verify" that the computer or data "was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(e)(1). These verification costs are illustrative of the type of "damage or loss" typically caused "by reason of" a CDAFA violation. *See id.* As such, the "majority of courts to consider the issue" have found "that the CDAFA's private right of action contemplates some damage to the computer . . . or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting*, 709 F. Supp. 3d at 1021.

Further, even if unjust enrichment were cognizable, Plaintiff's conclusory allegation is insufficient. FAC ¶ 65. The Opposition fails to salvage the FAC's deficient allegations about Plaintiff's losses or explain how VGE accessed his device or knew that Plaintiff did not consent.

### C. VGE Can Enforce the Arbitration Agreement.

Plaintiff's arguments that the arbitration agreement in the Tagged TOS should not be enforced are wrong on all counts.

1. Plaintiff's Arguments Are Barred by the Delegation Clause.

The arbitration agreement in the Tagged TOS is a clear and unmistakable agreement to arbitrate with nonsignatories. Plaintiff acknowledges that the Tagged TOS provides "[a]ll issues shall be for the arbitrator to decide, including the ***scope*** of this Arbitration Agreement." Opp. at 19. Plaintiff agreed to delegate the scope of enforceability to an arbitrator, and any dispute regarding enforceability must be resolved by the arbitrator. Courts enforce valid agreements to delegate such a "gateway" dispute, including whether parties have agreed to arbitrate or whether their agreement covers a particular controversy. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71–76 (2010).

Plaintiff's arguments challenging delegation do not take issue with the delegation clause itself, but instead primarily challenge the unconscionability of other terms in the Tagged TOS. *See Bielski v. Coinbase, Inc.,* 87 F.4th 1003, 1010–11 (9th Cir. 2023). For example, Plaintiff argues that "elements of the Tagged TOS" make the delegation clause unconscionable, including the "unilateral modification provision, the arbitration agreement's broad scope covering third-party misconduct, and the Mass Filings and delay provisions." Opp. at 31-34. These arguments do not address whether the delegation clause is enforceable. *See Rent–A–Center*, 561 U.S. at 73–74 (enforcing delegation agreement where arguments were not directed specifically at delegation). The burden of proving unconscionability rests with the party asserting it as a defense. *See Herman v. Brookdale Emp. Servs. LLC*, 2025 WL 306223, at *2 (N.D. Cal. Jan. 27, 2025). As Plaintiff has not shown that the delegation clause is unconscionable, any enforceability argument should be resolved by the arbitrator.

2. Claims Against VGE Are Arbitrable "Disputes" Under the Tagged TOS.

Plaintiff's argument that a "Dispute" does not apply to a controversy concerning VGE is unavailing. While the term "Dispute" is used in the Tagged TOS to define a claim between Plaintiff and Tagged, VGE does not need to be a party to the Tagged TOS in order to enforce the arbitration agreement through equitable estoppel. As discussed in the VGE MTD and further below, California appellate and Ninth Circuit precedent allows nonsignatories like VGE to enforce an arbitration agreement against a signatory.

3. VGE Can Enforce the Arbitration Agreement Under Equitable Estoppel.

*a. Plaintiff Improperly Asks That this Court Ignore Binding Precedent to Create a New Test for Equitable Estoppel.*

Plaintiff's allegations plainly meet the widely accepted test for equitable estoppel applied in this Circuit, allowing non-signatories to enforce an arbitration agreement based on intertwinement and interdependent conduct. Faced with this fact, Plaintiff improperly asks the Court to instead determine that this settled precedent was abrogated by the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), which did not involve equitable estoppel or California law. *See* Opp. at 25-27. *Morgan* was a narrow opinion that "decide[d] . . . a single issue" limited to whether federal courts "may create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" 596 U.S. at 416–17. Unlike *Morgan*, which concerned procedural rules applied by federal courts, equitable estoppel stems from California contract law principles. *See* Opp. at 21 ("Plaintiff agrees that California provides the relevant state contract law"); *see also Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (looking to "California cont[r]act law" to determine whether nonsignatory "may compel arbitration . . . based on equitable estoppel"). The Supreme Court in *Morgan* stated that it was not addressing "the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" or "whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness." 596 U.S. at 416. *Morgan* is thus not controlling here.

Further, equitable estoppel is a general principle of contract law that "operates to prevent one from taking an unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine." 13 Witkin, Sum. Cal. Law Equity § 212 (11th ed. 2024) (quoting *Peskin v. Phinney*, 182 Cal. App. 2d 632, 636 (1960)). In compelling arbitration under equitable estoppel, courts invoke principles of equity: "[t]he linchpin for equitable estoppel is fairness." *Herrera*, 104 F.4th at 710 (citations omitted). Here, a "reliance" requirement would be *inequitable*, as a nonsignatory is by definition not a party to the arbitration agreement and may not have been aware of it. Instead, the application of equitable estoppel is intended to prevent a party from trying to skirt an arbitration agreement. *See, e.g.*, *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024)

("Permitting Twilio to equitably enforce the arbitration agreement in this case would be fairer than permitting Perry-Hudson to skirt its agreement with Keeps by suing only Twilio.").

*b. Plaintiff's Claims Are Intertwined with the Tagged TOS and Privacy Policy.*

Plaintiff's argument that his claims are not "intertwined with" the Tagged TOS (Opp. at 27) misconstrues the applicability of equitable estoppel. Equitable estoppel does not require that the claims be limited to contract violations, but rather that the claims must simply be "intimately founded in and intertwined with the underlying contract obligations." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020) (citations omitted). The inquiry is whether the allegations "rely or depend on the terms, duties, or obligations in the contract containing the arbitration provision," and "whether the allegations are in any way founded in or bound up with the terms or obligations in the contract." *Id.* at 209 (citations omitted). This matter meets this test, as Plaintiff alleges that Tagged and VGE failed to inform or disclose to him that VGE would allegedly receive his information when he used the Tagged App. *See* FAC ¶¶ 20-21. These allegations depend on the terms and disclosures governing his use of the Tagged App, and thus require consideration of the Privacy Policy that contains the arbitration provision and discloses how Tagged may collect and share Plaintiff's information.

A number of recent decisions from this District support the application of equitable estoppel. For example, *Perry-Hudson* involved similar allegations: the plaintiff alleged that defendant Twilio collected his data without his consent through software installed on a non-party's website. 2024 WL 4933332, at *1. The defendant sought to enforce the arbitration agreement included in the website's terms of service. *Id.* at *1–2. The Court compelled arbitration because the privacy claims were "rooted in whether Twilio's use of his personal information was unlawful," which "turn[s] on whether [the plaintiff] consented to disclosure of his personal information to Twilio." *Id.* at *2. Plaintiff also misreads the Court's holding in *Hunt v. Meta Platforms, Inc.*, as the Court reasoned there that since "H&R Block's 'privacy and data security policy' is set forth in part in its Online Services Agreement, [the plaintiff's] mail and wire fraud claims against Google and Meta depend on that agreement and whether it was fraudulent," and thus the claims were "intimately intertwined" with the agreement. 735 F. Supp. 3d 1133, 1137–38 (N.D. Cal. 2024).

Similarly, in *Atkins v. Amplitude, Inc.*, the court recently granted the defendant's motion to compel arbitration, finding both intertwinement and interdependent conduct. 2025 WL 2521732, at **2-3 (N.D. Cal. Sept. 2, 2025). Regarding intertwinement, the Court noted that consent was a necessary element of the plaintiffs' claims, and because the DoorDash SDK "transmitted their personal information to Amplitude without the plaintiff's consent", the privacy policy's disclosure of information to third parties "is [] critical to the issue of consent." *Id.* at *2 (citations omitted). Regarding interdependent conduct, the court noted that DoorDash and Amplitude entered into an agreement to intercept and collect the plaintiff's data, "[a]nd it was DoorDash's failure to inform consumers about the existence of the SDK." *Id.* at *3. The court determined "it will be necessary to look to the Privacy Policy" in order "to determine the merits of the plaintiff's claims." *Id.*

Plaintiff argues that the Tagged TOS is relevant only to VGE's affirmative defenses, not his causes of action, and because he asserts statutory claims "only Verve's consent defense—not Plaintiff's claims—rely on the Tagged TOS." *See* Opp. at 28. However, this is not what the FAC alleges—the FAC alleges that Plaintiff was not informed about and did not "consent" to VGE receiving his information. *See* FAC ¶¶ 19-21, 42, 45. As previously discussed, lack of consent is required for liability under the applicable statutes. *See* MTD at Sections IV.B.4, IV.C. Thus, Plaintiff's allegations put his consent at issue, and his privacy claims are thus intimately founded in and intertwined with the data collection and sharing disclosures in the Tagged Privacy Policy.

*c. Plaintiff Alleges Interdependent Conduct by Tagged and VGE in Connection with the Tagged TOS and Privacy Policy.*

VGE is also entitled to enforce the arbitration agreement because Plaintiff alleges interdependent conduct by Tagged and VGE that is intimately connected with the Tagged TOS. *See* FAC ¶ 10 (alleging that Tagged contracted with VGE and embedded VGE's SDK into its app, allowing VGE to collect his information). Just because, as Plaintiff argues, the FAC includes an overbroad class definition not limited to Tagged users (*see* Opp. at 29; FAC ¶ 46), this does not change the fact that his individual claims against VGE are limited to his use of the Tagged App (*see* FAC ¶¶ 10, 43-45). The FAC does not allege that VGE collected his information through any other means,

distinguishing this case from *Houghton v. Leshner*, 2024 WL 5154071 (N.D. Cal. Nov. 25, 2024) relied on by Plaintiff. In *Houghton*, the plaintiffs alleging that the defendants were "sellers" of unregistered securities. 2024 WL 5154071, at *1. Nonsignatories sought to enforce the plaintiffs' arbitration agreement, but the court denied the motion for lack of interdependent conduct, noting that the alleged harm "does not stem from purchasing [the tokens] through Coinbase," and that the plaintiffs "could have purchased [the tokens] on any exchange." *Id.* at *6. Here, however, Plaintiff alleges harm based on a purported collection of information while using the Tagged App—and that neither Tagged nor VGE told Plaintiff that VGE would receive his information. *See* FAC ¶¶ 19-21, 42, 45. Unlike in *Houghton*, Plaintiff could not assert his claims if he had not used the Tagged App.

This action more closely resembles *Perry-Hudson*, a decision that Plaintiff conveniently ignores. *See* 2024 WL 4933332, at *3. As previously noted, in *Perry-Hudson* plaintiff alleged that the defendant Twilio collected his data without his consent when he used a website operated by a non-party. *Id.* at *1. The Court compelled arbitration based on the arbitration agreement in the website's terms, reasoning that the consent and data disclosure language in the website's privacy policy were intimately connected with plaintiff's allegations that he did not consent to his data being shared with Twilio. *Id.* at *3. This case involves the same type of intimate intertwinement between the Tagged TOS and Privacy Policy and Plaintiff's claim that he did not consent to Tagged sharing his data with VGE. Accordingly, as in *Perry-Hudson*, the arbitration agreement should be enforced.

4. <u>Plaintiff Does Not Demonstrate Unconscionability.</u>

To analyze unconscionability as it applies to a delegation clause, courts "must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023). The party asserting unconscionability as a defense to the enforcement of the arbitration agreement "bears the burden of proof." *Herman v. Brookdale Emp. Servs. LLC*, 2025 WL 306223, at *2 (N.D. Cal. Jan. 27, 2025). Plaintiff's Opposition fails to establish that either the delegation clause or the broader arbitration agreement is procedurally or substantively unconscionable.

*a. The Delegation Clause and Tagged TOS are Not Procedurally or Substantively Unconscionable.*

First, Plaintiff argues that the arbitration agreement is a procedurally unconscionable "contract of adhesion" because the Tagged TOS is "a standardized contract, imposed upon Plaintiff by Tagged without an opportunity to negotiate its terms." Opp. at 32. This is not sufficient to establish that the Tagged TOS is a contract of adhesion. Tagged, a dating app, is not an essential service, and Plaintiff was free to discontinue using it at any time. Courts within the Ninth Circuit have determined that when a company such as Tagged provides "a non-essential service, competes with other providers of similar services, and gives customers ample freedom to discontinue its services, [it] does not possess unequal bargaining power over Plaintiffs." *See McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, 501 F. Supp. 3d 965, 974 (D. Or. 2020).

Second, Plaintiff argues that the delegation clause is a "surprise," amounting to "a modest degree of procedural unconscionability." Opp. at 32. There is no "surprise" here: the Tagged TOS make clear that all "Disputes", including any claim regarding any aspect of a user's relationship with Tagged, whether based in contract, statute, or any other legal or equitable theory, including the validity or scope of the arbitration agreement, is subject to arbitration (*see* Rachman Decl., Ex. D, at § M), and the Privacy Policy discloses Tagged's data-sharing practices (*see* Rachman Decl., Ex. H, at § 4).

Third, Plaintiff argues that the arbitration agreement and delegation clause are procedurally unconscionable because they contain a modification provision allowing Tagged to "unilaterally modify its TOS at any time." Opp. at 33. Plaintiff does not explain how the modification provision creates a procedural issue with the arbitration agreement, let alone show that Tagged modified the Tagged TOS "so frequently or significantly as to make it oppressive." *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 956-57 (N.D. Cal. 2015) (rejecting conclusory procedural unconscionability argument).

Fourth, in arguing that the delegation clause and arbitration agreement are substantively unconscionable, Plaintiff cites *Ireland-Gordy v. Tile, Inc.* (*see* Opp. at 33), but that case is entirely distinguishable. 760 F. Supp. 3d 946 (N.D. Cal. 2024), *appeal filed*, No. 25-403 (9th Cir. Jan. 21, 2025). In *Ireland-Gordy*, the plaintiffs were stalking victims whose stalkers allegedly tracked them using hidden devices sold by defendants. *Id.* at 950. The defendants moved to compel arbitration,

and the Court carefully distinguished between two categories of claims, one based on "[plaintiffs'] stalkers' Tile accounts", and the other "based on [plaintiffs'] own Tile accounts." *Id*. at 951. Regarding this first category of claims, the Court held that enforcing the arbitration agreement would be substantively unconscionable because they had "no relation to either [p]laintiffs' own use of a Tile tracker or the services provided to [p]laintiffs." *Id*. at 960. The second category of claims, however, was based on "services provided to [p]laintiffs as part of their own Tile accounts." *Id*. at 962. The Court found that "any claims based on the stalkers' use of [p]laintiffs' own Tile trackers are . . . within the scope of the arbitration agreement." *Id*. at 963. Only this part of the holding is applicable here.

Fifth and finally, Plaintiff argues that the arbitration agreement is substantively unconscionable because the Mass Filing terms "delay the case and purport to provide Tagged—and Verve by extension—with a free preview of what claims are likely worth." Opp. at 33-34. This particular issue is not ripe for the Court to consider at this time. As per the Tagged TOS, the Mass Filing protocols only apply "if you . . . file[] a demand for arbitration that fits within the definition of Mass Filing referred to above" (*see* Rachman Decl., Ex. D, at § M), and this section further defines a Mass Filing to include "25 or more similar demands for arbitration" (*id*). Plaintiff has not yet certified a class in this action. Further, in the event that this Court finds the bellwether procedure to be unconscionable (which it should not), this Court should not disregard the remainder of the arbitration agreement. The arbitration section expressly includes a severability clause, providing that "[i]f any clause within this Arbitration Agreement . . . is found to be illegal or unenforceable, that clause will be severed . . . . and ***the remainder of this Arbitration Agreement will be given full force and effect***." *See id*. (emphasis added).

## III. CONCLUSION

For the foregoing reasons, VGE respectfully requests that this Court (1) dismiss the FAC in its entirety and with prejudice under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, (2) compel Plaintiff to arbitrate his claims, and (3) stay this action pending arbitration. *See* 9 U.S.C. § 3.

Dated: October 24, 2025

Respectfully submitted,

/s/ *Clark A. Waldon*

Clark A. Waldon (SBN 312696)
CWaldon@HollandLawLLP.com
Christopher T. Holland (SBN 164053)
CHolland@HollandLawLLP.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, California 94104

*Attorneys for Defendant*
*Verve Group Europe GMBH*

Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
1675 Broadway
**DAVIS+GILBERT LLP**
New York, New York 10019
(212) 468-4800