Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
**DAVIS+GILBERT LLP**
1675 Broadway
New York, New York 10019
Telephone: (212) 468-4800
Fax: (212) 468-4888

Christopher T. Holland (SBN 164053)
CHolland@HollandLawLLP.com
Clark A. Waldon (SBN 312696)
CWaldon@HollandLawLLP.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 200-4980
Fax: (415) 200-4989

*Attorneys for Defendant Verve Group Europe GMBH*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ALEX WOODS, individually and on behalf of all others similarly situated,

*Plaintiff,*

vs.

VERVE GROUP EUROPE GMBH, a German limited liability company,

*Defendant.*

Case No.: 5:24-cv-04909-NW

**REPLY IN SUPPORT OF DEFENDANT VERVE GROUP EUROPE GMBH'S REQUEST FOR JUDICIAL NOTICE**

**Hearing Date:** November 19, 2025
**Hearing Time:** 9:00 a.m.
**Judge:** Noël Wise
**Hearing Location:** San Jose Courthouse, Courtroom 3, 5th Floor

## I. INTRODUCTION

In connection with VGE's Motion to Dismiss, VGE filed a Request for Judicial Notice (Dkt. 45, the "RJN") seeking judicial notice of the Tagged Consent Flow that appears when a user such as Plaintiff downloads the Tagged App, the publicly-available Tagged TOS and Privacy Policy that were in effect when Plaintiff claims he downloaded and used the Tagged App, and the VGE Software Contracts between Tagged and VGE governing Tagged's embedding of the VGE SDK in the Tagged App. *See* Rachman Decl., Exs. A-C (the Tagged Consent Flow), D-G (the Tagged TOS), H-L (the Tagged Privacy Policy), and M-N (the VGE Software Contracts).[1] With respect to the Tagged Consent Flow, the Tagged TOS, and the Tagged Privacy Policy, in his opposition Plaintiff unavailingly argues that Plaintiff may not have seen them when he downloaded the Tagged App and created a Tagged account. Tellingly, Plaintiff does not claim that he was presented with different versions of these materials and offers no explanation for how he downloaded and used the Tagged App, agreeing to enable locations services, without encountering and agreeing to the terms in these documents. Moreover, the Tagged TOS and Privacy Policy form the basis of Plaintiff's claims, and Plaintiff does not challenge their authenticity, making judicial notice appropriate for these documents. As to the VGE Software Contracts, Plaintiff's action is based on the allegations in the FAC that Tagged and VGE contracted to allow for Tagged to embed the VGE SDK into the Tagged App, and thus the VGE Software Contracts are incorporated by reference into the FAC and should thus be given judicial notice. Plaintiff also fails to demonstrate why the Court should ignore the terms and conditions of these contracts given that Plaintiff's CDAFA claim necessarily depends upon them, making judicial notice appropriate for this reason as well.

Contrary to Plaintiff's position, each of the documents in issue on VGE's RJN are properly subject to judicial notice and/or incorporated by reference into the FAC, and accordingly, VGE respectfully requests that the Court give them judicial notice and grant VGE's RJN.

//

[1] The terms "Consent Flow", "TOS", "Privacy Policy", and "VGE Software Contracts" have the same meaning as set forth in VGE's RJN.

## II. ARGUMENT

### A. The Tagged Consent Flow (Exhibits A-C) Should be Given Judicial Notice.[2]

VGE's RJN requests that the court take judicial notice of the Tagged Consent Flow, consisting of the Google Play Store Interface and the disclosures contained therein (Rachman Decl., Ex. A), the Tagged App Log-in Page (Rachman Decl., Ex. B), and the Tagged App Registration Page (Rachman Decl., Ex. C), all of which are presented to users who download and open the Tagged App on their mobile Android device, which Plaintiff alleges he did. FAC ¶ 43. Plaintiff's argument that "Verve fails to show that this is the page flow that Woods would have seen when he downloaded the Tagged App" (RJN Opp. at 2) misses the point as Plaintiff readily concedes that he "expected Tagged to use his geolocation data" in his MTD Opposition (Dkt. 46, the "MTD Opposition" or "MTD Opp."). MTD Opp. at 6. Plaintiff could not have "expected" Tagged to use his geolocation data unless he created an account with the Tagged App and agreed to the Tagged TOS and Privacy Policy. Moreover, Plaintiff does not even attempt to argue that he saw a different consent flow when he downloaded the Tagged App and created a Tagged account.

Plaintiff essentially challenges the authenticity of the Tagged Consent Flow, *i.e.*, that the images are not what VGE says they are: the user interfaces presented to Plaintiff when he downloaded and used the Tagged App within the last year. But a plaintiff's "bald allegation that [a document] is not authentic does not raise an actual dispute as to the document's authenticity." *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d. 1131, 1143 (N.D. Cal. 2019); *see also Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019), *aff'd,* 994 F.3d 1102 (9th Cir. 2021) (judicially noticing call transcripts where plaintiff was "unsure if the attached transcripts [were] the same version used to prepare the complaint," finding the "argument fail[ed]" as plaintiff did "not raise doubts about the [transcript's] authenticity or accuracy"). Plaintiff relies on *In re Easysaver Rewards Litig.* (*see* RJN Opp. at 2), but unlike in this action, the defendant there asserted that the pages "were changed, modified, and revised

---

[2] Notably, Plaintiff's law firm, Edelson PC, did not oppose the Court taking notice of the DoorDash App Welcome Screen and App Sign Up Page in a recent similar action it has prosecuted before this Court. *See* Statement of Non-Opposition, Dkt. 34, *Atkins v. Amplitude, Inc.*, Case No. 3:24-cv-04913 (N.D. Cal. Feb. 11, 2025).

over time," so the court declined to "compare and contrast the several versions of the webpages to determine if there are any material differences." *See* 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010).

Here, by contrast, there is no evidence or even a plausible indication by Plaintiff that the Tagged Consent Flow has changed in any material respect from when he downloaded the Tagged App sometime within a year prior to the filing of the FAC. Plaintiff does not argue or point to any allegations in the FAC that the Tagged Consent Flow has in fact changed. The circumstances here are thus more like those in *Saeedy v. Microsoft Corp.*, where the court rejected a similar argument because the plaintiffs "fail[ed] to offer contradictory evidence as to what they saw when they opened their Microsoft accounts." 757 F. Supp. 3d 1172, 1193-94 (W.D. Wash. 2024). The court reasoned that such "bare assertions d[id] not suffice" to "create a reasonable dispute" given "Microsoft provide[d] substantively consistent and uncontradicted testimonial and exemplar evidence showing what the account-creation process would have looked like during the periods of time in which [p]laintiffs created their accounts." *Id*. at 1194-95 (*citing Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989-90 (N.D. Cal. 2017)).

Because Plaintiff does not otherwise dispute that the Tagged Consent Flow "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Exs. A-C are properly subject to judicial notice and, VGE respectfully submits, should be considered by the Court. *See* Fed. R. Evid. 201(b).

The Court may also consider the Tagged Consent Flow because it is incorporated by reference into the FAC. Where, as in this matter, a plaintiff's claims depend on the allegation that notice was not provided, and a defendant provides evidence that notice did occur, courts have held that such evidence is fundamental to the complaint and subject to incorporation by reference. *See, e.g., Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 867-868 (N.D. Cal. 2022) (incorporating by reference a notice allegedly not received by plaintiff); *Starks v. Geico Indem. Co.*, 2015 WL 12942282, at *2 (C.D. Cal. Nov. 10, 2015) (same); *Chyba v. Green Tree Servicing, LLC*, 2012 WL 12874929, at *2 (S.D. Cal. Dec. 12, 2012) (incorporating correspondence between the parties where plaintiff "alleg[ed] that [defendant] did not send her written notice"); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d

1125, 1136 (N.D. Cal 2015) (incorporating by reference a privacy policy where the plaintiff did not mention it but alleged he did not consent to the relevant data practices).

In the FAC, Plaintiff explicitly alleges that "[a]t no point does Verve inform consumers that its SDK and other technology or code is collecting their sensitive geolocation data, nor does it prompt consumers to grant Verve permission to access or collect any data whatsoever." FAC. ¶ 20. But the Tagged Consent Flow shows that Plaintiff was informed of this in the Tagged TOS and Privacy Policy when he downloaded, signed up for, and first logged into the Tagged App. *See* Rachman Decl., Exs. A-C. Accordingly, incorporation by reference is proper.

Plaintiff incorrectly argues that his claims are "concerned not with what Tagged does, but with what Verve does." RJN Opp. at 2. This is contradicted by the allegations in the FAC that "[t]he developers of the 'Tagged' mobile app have embedded Verve's PubNative SDK and other technology or code into their mobile app." FAC ¶ 44. Indeed, Plaintiff seeks to represent a class of all individuals who "used an app on their mobile device" with the VGE SDK embedded and "that did not publicly disclose 'Verve' in any of the app's notices or disclosures." FAC ¶ 46. Therefore, the FAC itself makes the contents of the Tagged App's notices and disclosures central to defining a potential class member's entitlement to relief. Courts have often found it appropriate to consider the sign-up-wraps and associated privacy policies of non-parties in similar circumstances. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (consent for the defendant Stripe's data collection established through its client's privacy disclosures).

Plaintiff's argument that pleading lack of consent does not incorporate a document by reference because it merely creates a "defense" to liability is equally unfounded. *See* RJN Opp. at 2-3. Courts have repeatedly held that plaintiffs asserting privacy claims must prove lack of consent as an element of the claims. *See, e.g.*, *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024) ("Each claim requires [plaintiff] to plead (and ultimately prove) that he did not consent to Twilio's interception. . . . [C]onsent is an element to each claim [.]"); *Garcia*, 78 F. Supp. 3d at 1135-36 ("As an initial matter, the Court disagrees with Plaintiff's assertion that lack of consent is not an element of his [CIPA] claim."); *Reyes v. Educ. Credit Mgmt.* Corp., 773 Fed. App'x 989, 990 n.1 (9th

Cir. 2019) ("[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record."); *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (access is unlawful under CDAFA because it is done "without permission"). Moreover, Plaintiff's alleged lack of consent is relevant to his Article III standing to bring his claims.

Plaintiff also erroneously argues that, even if consent is an element of his claims, the Court may not rely on an incorporated document to contradict his conclusory allegation that he did not consent, citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). *See* RJN Opp. at 2-3. In *Grier v. Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1, the Ninth Circuit made clear that *Khoja* does not stand for this proposition. Instead, as the *Finjan* court held, *Khoja* merely explained that defendants may not seek to disprove with extraneous documents "specific facts" that are well-pleaded in a complaint. *Finjan*, 58 F.4th at 1052 n.1 (citing *Khoja*, 899 F.3d at 1003). No such restriction applies where, as in this case, the complaint merely contains a *general conclusion* that is contradicted by *specific facts* retold in a document incorporated by reference in the complaint or subject to judicial notice. *Id.* Since the FAC only generally concludes that Plaintiff did not consent to data collection without offering any specific facts establishing how this could be the case (*see* FAC ¶ 45), the Tagged Consent Flow can be considered through incorporation by reference and judicial notice to contradict this threadbare allegation. *See id.; Garcia*, 78 F. Supp. 3d at 1136 ("[T]he Court need not accept as true any allegations contradicted by 'matters properly subject to judicial notice or by exhibit' or 'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'") (citations omitted).

### B. The Tagged TOS (Exhibits D-F)[3] and Privacy Policy (Exhibits H-L) Should be Given Judicial Notice.[4]

Plaintiff's argument that this Court should not take judicial notice of the Tagged TOS and

---

[3] There are no material differences between the Tagged TOS attached as Exhibit G and the Tagged TOS attached as Exhibits D-F. However, based on Plaintiff's representation that "Mr. Woods's activity on the Tagged App occurred within the year preceding its filing" of the FAC (RJN Opp. at 4), this Court need not consider Exhibit G.

[4] Similar to the Consent Flow, Plaintiff's law firm, Edelson PC, did not oppose the Court taking notice

Privacy Policy because "[t]here is nothing to suggest that [Plaintiff] ever saw" the Tagged TOS and Privacy Policy, "or ever agreed to terms that incorporated them" (*see* RJN Opp. at 4-5), asks that the Court disregard the entirety of the Tagged Consent Flow. As discussed above, judicial notice of the Tagged Consent Flow is appropriate, and accordingly, because Plaintiff admits that he downloaded and used the Tagged App, enabling location services (*see* FAC ¶¶ 43-44), and the Tagged Consent Flow shows that in doing so Plaintiff had to have agreed to the terms of the Tagged TOS and Privacy Policy to use the Tagged App, the Tagged TOS and Privacy Policy should also be given judicial notice.

Plaintiff offers no facts to rebut that the Tagged Consent Flow shows that before downloading the Tagged App, Plaintiff would have navigated through the Google Play Store Interface shown in Exhibit A to the Rachman Declaration. The Google Play Store Interface contains several disclosures presented to users upon downloading the Tagged App, including disclosures concerning Data Safety, Data Shared (including "Approximate location and Precise location"), and Data Collected. *See* Rachman Decl., Ex. A. Moreover, the Tagged App Log-in Page expressly states at the bottom "[b]y clicking Continue you agree to the **Terms of Service** and **Privacy Policy**" (emphasis in original). *See* Rachman Decl., Ex. B. Similarly, the Tagged App Registration Page notifies users that "[b]y clicking 'Accept Terms' I agree to the **Terms of Service** and confirm that I have read and understood the **Privacy Policy**" (emphasis in original), and provides users with the option to either decline or accept these terms. *See* Rachman Decl., Ex. C. Plaintiff fails to present any plausible explanation to this Court describing how he allegedly managed to download and use the Tagged App and agree to enabling location services without seeing or agreeing to the Tagged TOS and Privacy Policy. *See* FAC ¶¶ 43-44. Accordingly, the Court should give judicial notice to these documents as well.

---

of DoorDash's Consumer Privacy Policy, dated July 1, 2024, and DoorDash's Consumer Privacy Policy, dated October 22, 2024, in a recent action it has prosecuted before this Court. *Compare* Statement of Non-Opposition, Dkt. 34, *Atkins v. Amplitude, Inc.*, Case No. 3:24-cv-04913 (N.D. Cal. Feb. 11, 2025), *with* RJN, Dkt. 31, *Atkins v. Amplitude, Inc.*, Case No. 3:24-cv-04913 (N.D. Cal. Jan. 7, 2025). In his Opposition, Plaintiff does not explain why the Tagged Privacy Policy is materially different from the DoorDash Consumer Privacy Policy. Plaintiff's law firm also failed to advance arguments against judicial notice regarding certain versions of the defendant's privacy policy and terms of service in a separate action it has prosecuted before this Court. *Compare* RJN Opp. at 3, 7, Dkt. 32, *Bender v. Twilio*, Case No. 3:24-cv-04914 (N.D. Cal. Dec. 18, 2024), *with* RJN at ¶¶ 6, 24, Dkt. 23, Case No. 3:24-cv-04914 (N.D. Cal. Oct. 18, 2024).

Plaintiff incorrectly asserts that the Ninth Circuit's holding in *Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) is inapplicable, arguing that VGE "has failed to point to any similarly unambiguous disclosures set forth in Tagged's TOS that clearly disclosed Verve and its data collection." RJN Opp. at 4-5. However, the Tagged TOS expressly incorporates the terms of the Privacy Policy therein (*see* Rachman Decl., Ex. D ("the Privacy Policy…[is] part of this Agreement")), and the Privacy Policy, in turn, informs users that Tagged "may also disclose your personal information, such as device and browsing, and activities and usage information, to ***third party marketing and data analytics providers***, and other companies who provide marketing, advertising, campaign management, or analytics services on our behalf" (*see* Rachman Decl., Ex. H, § 4 (emphasis added)). The Privacy Policy further specifies that Tagged may collect "precise geolocation data" from users. *See id*. at § 13(B). This is an unambiguous disclosure to users that a third party such as VGE can collect the data at issue in the FAC.

VGE's position is further supported by this Court's recent decision in *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229 (N.D. Cal. October 16, 2025). In *Walsh*, the complaint alleged that plaintiff visited the Dollar Tree Website to browse information about its products. 2025 WL 2939229, at *1. The Court granted the defendant's request to take judicial notice of Dollar Tree's privacy policy and website terms and conditions for the content stated therein, on the basis that the privacy policy formed the basis for the plaintiff's claim and the plaintiff did not challenge the authenticity of the documents. *Id.* Similarly here, the Tagged TOS and Privacy Policy form the basis of Plaintiff's claims, and Plaintiff does not challenge their authenticity, and thus this Court may take judicial notice of them for the same reasons as set forth in *Walsh.*

Lastly, Plaintiff fails to address VGE's arguments and numerous citations demonstrating that the Tagged TOS and Privacy Policy may be judicially noticed because they are available on public facing websites. As discussed at length in VGE's RJN brief, websites and their contents may be judicially noticed. *See* RJN at 5-6. Numerous courts have held that a failure to oppose an argument amounts to a concession or waiver of that argument. *See, e.g., McIntosh v. Wells Fargo Bank, N.A.*, 2020 WL 3104052, at *6 (N.D. Cal June 11, 2020), *quoting Lou v. JP Morgan Chase Bank N.A.*,

2018 WL 1070598, at *2 (N.D. Cal. Feb. 26, 2018).

### C. VGE Software Contracts with Tagged (Exhibits M-N) Should be Given Judicial Notice.

**Exhibits M-N** to the Rachman Decl. together make up the VGE Software Contracts which govern the terms pursuant to which VGE provides Tagged with the VGE SDK to embed in the Tagged App. The VGE Software Contracts, comprised of Exhibit M (the Publisher Optimization Agreement) and Exhibit N (the Data Processing Agreement), were executed between VGE's predecessor PubNative GmbH and The Meet Group, Inc. (the owner of Tagged and the successor-in-interest to Ifwe, Inc., the entity that is referenced in FAC ¶ 10 as contracting with VGE).

Plaintiff argues against judicial notice of these documents on the grounds that "Verve's business records are not free from reasonable dispute," and that Plaintiff cannot "test whether the documents produced from these records are accurate or complete." RJN Opp. at 7. Here, the authenticity of the VGE Software Contracts has been verified in the Declaration of John Nicholas Guinto submitted in connection with VGE's Motion to Dismiss. *See* Guinto Decl., ¶¶ 6-9. Without the VGE Software Contracts pursuant to which VGE agreed to provide the VGE SDK to be integrated Tagged App, there is no basis for Plaintiff's claims against VGE and Plaintiff would be limited to asserting claims against Tagged.

Contrary to Plaintiff's argument at RJN Opp. at 7, VGE does explain in VGE's RJN how the VGE Software Contracts are incorporated by reference into the FAC. It is because Plaintiff's entire action is based on the allegation that VGE contracted with Tagged to allow Tagged to embed the VGE SDK into the Tagged App. RJN at 8; FAC ¶¶ 10 & 44.[5] Plaintiff does not dispute that he necessarily

[5] Paragraph 10 of the FAC alleges that Ifwe, Inc. contracted with VGE to embed the VGE SDK into the Tagged App. Ifwe, Inc. is the predecessor-in-interest to The Meet Group, Inc. (*see* The Meet Group, *MeetMe Announces Closing of if(we) Acquisition and Rebrands to the Meet Group* (Apr. 3, 2017), https://www.themeetgroup.com/meetme-announces-closing-of-ifwe-acquisition-and-rebrands-to-the-meet-group/), and The Meet Group, Inc. is the current owner and operator of the Tagged App (*see* Rachman Decl., Ex. D ("This [TOS] Agreement . . . controls your access and use of Tagged . . . made available to you . . . by The Meet Group, Inc . . . [t]he Privacy Policy and the Content and Conduct Policy are each part of this Agreement."), and Ex. H ("The Meet Group, Inc., its brands, affiliates, and subsidiaries . . . values your privacy. This Privacy Policy . . . describes how TMG collects, uses, discloses, and otherwise processes personal information described in this Policy.")). The Meet Group, Inc. is a party to the VGE Software Contracts. *See* Rachman Decl., Exs. M-N.

relies on the VGE Software Contracts to state his claims; he offers no genuine dispute as to their authenticity; nor does he deny they are relevant to VGE's MTD. Incorporation and judicial notice are therefore warranted. *See Khoja,* 899 F.3d at 1002 (incorporation is proper where the plaintiff necessarily relies on a document to state his claims).

Additionally, the existence of the VGE Software Contracts is relevant to showing that VGE required that Tagged "has obtained all required permissions or is otherwise entitled to transmit such Personal Data" (*see* Guinto Decl., Ex. 1 § 5.4) and "inform[s] the user in the app's privacy policy about the collection of identifiers and the user's right to object to the processing" (*see* Guinto Decl., Ex. 2 § 6(4)). This goes directly to the allegations that VGE had knowledge of the VGE SDK's access to Plaintiff's mobile device without his permission, which are the basis for Plaintiff's CDAFA claim. *See* FAC ¶ 63.

As such, the VGE Software Contracts are subject to judicial notice; Plaintiff fails to raise any genuine dispute as to their authenticity and they are the basis of the allegations supporting Plaintiff's claims. *See Sarmiento*, 367 F. Supp. 3d. at 1143 (a plaintiff's "bald allegation that [a document] is not authentic does not raise an actual dispute[.]").

**III. CONCLUSION.**

For the reasons set forth herein and in VGE's RJN, VGE respectfully requests that the court grant its request for incorporation by reference and judicial notice of the Tagged Consent Flow (Rachman Decl., Exs. A-C), the Tagged TOS (Rachman Decl., Exs. D-F), the Tagged Privacy Policy (Rachman Decl., Exs. H-L) and the VGE Software Contracts with Tagged (Rachman Decl., Exs. M-N).

//

//

//

//

Dated: October 24, 2025

Respectfully submitted,

/s/ *Clark A. Waldon*

Clark A. Waldon (SBN 312696)
CWaldon@HollandLawLLP.com
Christopher T. Holland (SBN 164053)
CHolland@HollandLawLLP.com
**HOLLAND LAW LLP**
220 Montgomery Street, Suite 800
San Francisco, California 94104

Marc J. Rachman (admitted *pro hac vice*)
mrachman@dglaw.com
Zachary G. Karram (admitted *pro hac vice*)
zkarram@dglaw.com
Charlotte McCary (admitted *pro hac vice*)
cmccary@dglaw.com
**DAVIS+GILBERT LLP**
1675 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant*
*Verve Group Europe GMBH*