United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX WOODS,<br>Plaintiff,<br>v.<br>VERVE GROUP EUROPE GMBH,<br>Defendant. | Case No. 24-cv-04909-NW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 44 |

Plaintiffs Alex Woods bring this class action against Defendant Verve Group Europe GMBH ("VGE"), the creator of a software development kit ("SDK") that, when embedded into the code of a third-party app, "enables backdoor access to consumers' devices and opens a direct data collection pipeline to VGE and its advertising platform monetization partners." Woods alleges that VGE's conduct violates (1) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51 and the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. First Amended Complaint ("FAC"), ECF No. 20. VGE moves to dismiss Woods' complaint on several grounds, or, in the alternative, to compel arbitration based on an arbitration agreement executed between Woods and Tagged. VGE's motion is GRANTED.

## I. BACKGROUND

Plaintiff's allegations are straightforward: sometime in the last year, Plaintiff "downloaded and used" the "Tagged" dating app. Developers of the Tagged app contracted with VGE "to embed [VGE]'s SDK and other data collecting technology or code into the Tagged app." With the SDK embedded, VGE gained the ability to collect "Plaintiff's timestamped geolocation information, device IDs, device fingerprint data, and information about which app(s) he uses on

his mobile device." *Id.* ¶¶ 43-44. According to Plaintiff, he "did not (and could not) grant [VGE] permission to collect any information." *Id.* ¶ 45.

Plaintiff, like all Tagged users, had to expressly consent to the Tagged Terms of Service and Privacy Policy before using the Tagged App.[1] Once a user like Plaintiff downloads the Tagged App onto their device, and before they can use the app, they are prompted to choose between creating a Tagged account or otherwise log-in to an existing account. *See* Rachman Decl., Exhibit B. Before finalizing the creation of an account, users are informed that "[b]y clicking Continue you agree to the **Terms of Service** and **Privacy Policy**", with each bolded phrase containing a hyperlink to the relevant document. *See id*. When users continue to register an account, a "Registration" pop up appears on the screen, requiring users to accept the Tagged Terms of Service and confirm they have read and understood the Tagged Privacy Policy. *See* Rachman Decl., Exhibit C. A user must press "ACCEPT TERMS" in the registration popup to finish creating their account and log into the Tagged App. *See id*.

## II. LEGAL STANDARD

VGE asks the Court to rule first on its motion to dismiss and, only if that is denied, to move to the motion to compel arbitration. However, the proper sequence for resolving these motions is to first consider the motion to compel arbitration. If the parties have agreed to arbitrate this matter, then the arbitrator should hear any motions to dismiss. This avoids the Court deciding the merits of a case for which there is a valid arbitration agreement.

In considering a motion to compel arbitration, the Court applies a summary judgment standard and may consider evidence outside of the pleadings, such as declarations. *See Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (noting that application of the summary judgment standard is appropriate when evaluating a motion to compel arbitration); *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-EX, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019) ("The present case involves a motion to compel arbitration where extrinsic evidence, including

[1] The Court acknowledges that certain information in this section is not alleged within the complaint. However, as discussed in the Legal Standard section, because the Court's order resolves VGE's motion to compel arbitration, the Court may consider evidence outside the pleadings. *See supra* § II.

declarations, is considered and both sides filed multiple declarations in support of their positions."). The moving party bears the initial burden of informing the court of the basis for the motion. *Curry v. Matividad Med. Ctr*., No. 5:11-CV-04662-EJD, 2013 WL 2338110, at *1 (N.D. Cal. May 28, 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets this initial burden, the burden then shifts to the opposing party to present specific facts showing that there is a genuine issue for trial. *Id.* at *2.

The Federal Arbitration Act ("FAA") provides that an agreement to arbitrate disputes arising from "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden as to both elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## III. DISCUSSION

VGE is entitled to enforce the arbitration agreement against Woods under the doctrine of equitable estoppel. VGE has demonstrated (1) that the Terms of Service and Privacy Policy constitute a valid contract and (2) that VGE, as a non-signatory, may enforce the arbitration provision within the Terms of Service through equitable estoppel.

### A. The Validity of the Agreement

VGE is entitled to enforce the arbitration agreement against Woods under the doctrine of equitable estoppel. Where, as here, the question of arbitrability intersects with the doctrine of equitable estoppel, the Court decides the question of arbitrability, notwithstanding any existing delegation provision. *See Nutanix, Inc. v. Tessell, Inc.*, No. 24-cv-01729- AMO, 2025 WL 793652, at *4 (N.D. Cal. Mar. 12, 2025) ("The court, not the arbitrator, decides questions of arbitrability involving judicial doctrines and nonsignatories." (citing *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013)); *see also Young v. ByteDance*, Inc., 700 F. Supp. 3d 808, 813 (N.D. Cal. 2023) ("[I]t's not clear how a nonparty to an arbitration agreement could ever invoke a delegation provision when seeking to compel arbitration based only on equitable

United States District Court
Northern District of California

estoppel.”).

“In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation.” *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). Under California law, a contract is not formed unless the parties “manifest their mutual assent to the terms of the agreement,” which can be done through written or spoken word as well as conduct. *Id.* “These elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed.” *Id.* at 855-56.

“In California, internet contracts are classified ‘by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps.’” *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 463 (2021). Here, Plaintiff was provided with links to the Tagged Terms of Service and Privacy Policy at the time of account creation and upon subsequent logins. ECF No. 45-3. Plaintiff was notified that “[b]y clicking Continue you agree to the **Terms of Service** and **Privacy Policy** [for Tagged].” *Id.* (bolding in original). This constitutes a “sign-in wrap,” and to assess whether Plaintiff was on inquiry notice of the terms, the Court employs the framework set out in *Berman*:

> [A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856.

The Court now considers whether Tagged provided reasonably conspicuous notice to users of an agreement, and whether Plaintiff manifested assent to that agreement.

**1. Reasonably Conspicuous Notice**

“[T]here is no bright-line test for finding that a particular design element is adequate in every circumstance.” *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1156 (9th Cir. 2025). “At bottom, when visually analyzing the conspicuousness of an advisal and any hyperlinks, courts

must be tuned to the expectations of a reasonably prudent internet user." *Godun*, 135 F.4th at 710 (citation omitted). Here, the Tagged app's advisal of the Terms of Service and Privacy Policy were conspicuous to a reasonably prudent internet user.

When users first download and open the Tagged app, they are presented with a Log-In Page. ECF No. 45-1. The Tagged Terms of Service and Privacy Policy are at the bottom of the page below the buttons to create an account. ECF No. 45-3. The hyperlinks to the Terms and Privacy Police are not set off in a separate font color, but they are bolded and are the only terms on the page set off in this way. When the user selects "Continue with Google," a pop-up window appears that states "[b]y clicking 'Accept Terms' I agree to the **Terms of Service** and confirm that I have read and understood the **Privacy Policy**." ECF No. 45-4. The hyperlinks here are set off in a separate font color. Based on the overall context of the design, a reasonably prudent internet user would be on inquiry notice of an agreement with Tagged when creating an account. *See, e.g.*, *Bender v. Twilio Inc.*, No. 24-CV-04914-AMO, 2025 WL 2308484, at *3 (N.D. Cal. Aug. 11, 2025); *Perry-Hudson v. Defendant, Inc.*, No. 24-CV-03741-VC, 2024 WL 4933332, at *1 (N.D. Cal. Dec. 2, 2024).

While Plaintiff concedes that he made an account with Tagged, he contests VGE's contention that he necessarily viewed the Log-In Page provided as part of the Rachman Declaration. Plaintiff provides no evidence, however, that he did not view the Log-In Page, meaning there is no genuine dispute that Plaintiff interacted with that specific screen. Given Plaintiff's silence on the Log-In Page as a whole, he makes no arguments that the agreements hyperlinked on that screen were not reasonably conspicuous.

**2. Manifestation of Assent**

The second step in this contract formation framework requires the Court "to consider whether any action taken by the internet user—such as clicking a button or checking a box—'unambiguously manifest[ed] his or her assent' to proposed contractual terms." *Godun*, 135 F.4th at 710 (citation omitted). Manifestation of assent occurs "where an internet user is 'explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.'" *Id.* at 710-11 (quoting *Berman*, 30 F.4th at 857).

The Tagged Log-In Page satisfies this requirement. As discussed, in the process of creating a Tagged account, a pop-up window appears that states "[b]y clicking 'Accept Terms' I agree to the **Terms of Service** and confirm that I have read and understood the **Privacy Policy**." ECF No. 45-4. The Ninth Circuit has found similar language sufficient to demonstrate a user's manifestation of assent. *Berman*, 30 F.4th at 858 ("This notice defect could easily have been remedied by including language such as, "By clicking the Continue >> button, you agree to the Terms & Conditions."). Plaintiff has presented no evidence that he did not click the button to continue on the Tagged app or that he did not create an account. Therefore, the Court finds no dispute of fact as to his manifestation of assent.

For these reasons, the Court determines Plaintiff entered into a valid agreement to arbitrate with Tagged.

**B. Equitable Estoppel**

"[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Under California law, the doctrine of equitable estoppel permits a nonsignatory to enforce an arbitration clause in two scenarios: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Id.* at 1128-29; *see also Gonzalez v. Nowhere Beverly Hills LLC*, 107 Cal. App. 5th 111, 118-20 (2024) (holding equitable estoppel applies when "the claims the plaintiff asserts against the nonsignatory [are] dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause").

VGE has demonstrated that Plaintiff must rely on his agreements with Tagged in order to assert his claims against VGE. To determine whether Plaintiff's claims against Defendant are

United States District Court
Northern District of California

"intimately founded in and intertwined with" the Tagged Terms of Service, the Court looks "at the relationship between the parties and their connection to the alleged violations." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 (9th Cir. 2024) (quoting *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021)). The Court considers whether Plaintiff's "claims are fully viable without reference to" the Tagged Terms of Service. *Id.*

Plaintiff's theory of injury is that Defendant's SDK transmitted user information without user consent. To succeed on either of Plaintiff's two causes of action, Plaintiff must prove that VGE was not authorized to collect or intercept his information. *See* Cal. Penal Code § 502(c) (providing for various prohibitions, which require knowing access by the defendant "without permission"); Cal. Penal Code § 631(a) (allowing conduct "[i]f the consent of the user of that service has been obtained."). Consequently, whether Plaintiff consented to transfer of his information from the Tagged app to Defendant is an essential element of his claims. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2 (noting the plaintiff's privacy claims, including those under CIPA, required the plaintiff to plead he did not consent to disclosure of his information); *Bui-Ford v. Tesla, Inc.*, No. 4:23-CV-02321, 2024 WL 694485, at *5 (N.D. Cal. Feb. 20, 2024) (same for CDAFA).

Tagged's Privacy Policy expressly discusses the manner by which Tagged may disclose Personal Information. Therefore, because consent is an element of each claim, how the policy discusses the disclosure of information to third parties "is [ ] critical to the issue of consent." *Bender*, 2025 WL 2308484, at *6. Tagged's Privacy Policy discloses that Tagged may share customer information with "vendors and service providers who perform functions on our behalf, such as . . . data analytics providers." ECF No. 45-10. The Privacy Policy goes on to explain that Tagged may collect data that they might subsequently disclose to third parties.

These provisions are "intimately founded in and intertwined with" Plaintiff's claims because they govern how Tagged may share user information with third parties—like Defendant—and whether Plaintiff consented to such transfer. *Kramer*, 705 F.3d at 1128. Since the issue of consent is critical to his causes of action, it cannot be said his "claims are fully viable without reference to" the policy. *Goldman*, 173 Cal. App. 4th at 230.

Accordingly, the Court determines Defendant may enforce the agreement to arbitrate between Plaintiff and Tagged under the theory of equitable estoppel.

**C. Unconscionability**

In an effort to avoid arbitration, Woods argues that the Terms of Service and Privacy Policy are unconscionable. Most of Woods' argument is spent discussing the unconscionability of the delegation provision, but the Court did not rely on that provision in its decision.[2] Plaintiff's overarching unconscionability arguments are independently unavailing.

To establish unconscionability, a party must demonstrate both procedural and substantive unconscionability, although both are not required to be equally present. *Lim v. TForce Logistics*, LLC, 8 F.4th 992, 1000 (9th Cir. 2021). Here, Plaintiff is unable to demonstrate anything more than minimal procedural unconscionability. "The procedural element of unconscionability focuses on two factors: oppression and surprise." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1138 (N.D. Cal. 2010) (internal quotation marks and citation omitted). In order to establish oppression**,** Plaintiff must allege facts showing "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 1139. "[A]ny claim of 'oppression' may be defeated if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable." *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005). Here, although Plaintiff did not bargain for these terms, he has not alleged facts showing he did not have a "reasonably available alternative" to the Tagged app. Similarly, Plaintiff has not alleged surprise. There is no reason to believe that Plaintiff could not or did not access Tagged's Terms and Conditions at the time of purchase. *See Davidson v. Apple, Inc*., No. 16-CV-04942-LHK, 2017 WL 976048, at *12 (N.D. Cal. Mar. 14, 2017).

Though the failure to sufficiently allege procedural unconscionability is dispositive, the Court notes that Woods also fails to demonstrate substantive unconscionability. "The substantive

[2] To the extent Plaintiff insists that the very existence of the delegation provision renders the entire agreement unconscionable, the Court could merely sever it and uphold the remainder of the contract, including the arbitration provision.

element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience." *Tietsworth*, 720 F. Supp. 2d at 1138. Because the contract at issue here involves access to a "nonessential recreational activity"—a dating app—the contract is not substantively unconscionable because "the consumer always has the option of simply forgoing the activity." *Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*, 2023 WL 2583307, at *12 (S.D. Cal. Mar. 20, 2023) (citing *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1245 (2007)). Although the Terms of Service may be one-sided, substantive "unconscionability in this context requires a one-sided result along with the absence of a justification for it." *Ramirez v. Charter Commc'ns*, 551 P.3d 520, 535 (Cal. 2024).

In sum, Woods failed to carry his burden to demonstrate that the arbitration agreement in the Terms of Service is unenforceable as unconscionable. Accordingly, any other disputes about the agreement's enforceability are validly delegated to the arbitrator.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS VGE's motion to compel arbitration. The case is STAYED pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court sets a case management conference for approximately six months from the issuance of this order on May 12, 2026 at 9:00a.m for the parties to update the Court on the status of the arbitration.

**IT IS SO ORDERED.**

Dated: December 9, 2025

Noël Wise
United States District Judge